Alberto Villanueva GARCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–89–047–CR.

Court of Appeals of Texas,
Corpus Christi.

May 24, 1990.
Rehearing Overruled June 22, 1990.

Desiderio Trevino, Jr., Rodrigo Martinez, Jr., Edinburg, for appellant.

Rene Guerra, Dist. Atty., Edinburg, for appellee.

Before NYE, C.J., and BENAVIDES and SEERDEN, JJ.

## OPINION

SEERDEN, Justice.

A jury found appellant guilty of murder, Tex.Penal Code Ann. § 19.02(a)(1) (Vernon 1989), further found that he was a habitual offender, and assessed punishment at 99 years' confinement. The trial court added a finding that appellant used a deadly weapon. By seven points of error, appellant attacks the charge, claims the evidence insufficient to support a finding that he used a firearm, claims that the prosecution improperly suppressed material evidence, and challenges the affirmative finding on use of a deadly weapon. We reform and affirm the trial court's judgment.

By his first three points, appellant contests the inclusion in the charge of a paragraph permitting conviction on a theory of transferred intent. Point one alleges that the paragraph permitted conviction on a mens rea not alleged in the indictment, point two alleges that it permitted conviction on a mens rea not supported by the evidence, and point three alleges that it permitted conviction on a mens rea of which appellant had inadequate notice.

The indictment alleged, in pertinent part, that appellant "did then and there intentionally and knowingly cause the death of an individual, JOSE MATA, the victim by shooting the said victim with a firearm...." The charge included two application paragraphs, the second one instructing a finding of guilty if the jury found that appellant "did intentionally or knowingly shoot a firearm at JAVIER GAMEZ with intent to kill JAVIER GAMEZ but instead missed JAVIER GAMEZ and hit and killed JOSE MATA...." The charge tracked Tex.Penal Code Ann. § 6.04(b)(2) (Vernon 1974) in the abstract instruction, "A person is neverless (sic) criminally responsible for causing a result if the only difference between what actually occurred and what he desired or contemplated or risked is that a different offense was committed or a different person was injured, harmed, or otherwise affected."

Appellant objected at trial to the inclusion of the second application paragraph in the charge on grounds that the State was allowed two bites at the apple, that the indictment failed to give notice, and that the jury would be confused. We have found no objection to the abstract paragraph on transferred intent.

The legislative intent of Tex.Penal Code Ann. § 6.04(b)(2) (Vernon 1974) has been summarized:

Subsection (b)(2) preserves a narrow version of the transferred intent doctrine derived from the prior constructive malice statutes (Penal Code arts. 42 to 44) by

the Texas courts, e.g., *Hayes v. State* [171 Tex.Cr.R. 646], 353 S.W.2d 25 (Cr. App.1962); *Covert v. State* [134 Tex. Cr.R. 12], 113 S.W.2d 556 (Cr.App.1938). Under this subdivision, for example, if D shoots with intent to kill V, but misses and unintentionally kills W, he is nevertheless guilty of murder—as he would be under the law of every American jurisdiction.

Searcy and Patterson, Practice Commentary, Tex.Penal Code Ann. 36.04 (Vernon 1974).

■ When an appellant claims jury charge error, the appellate court must determine whether the charge was erroneous, and if so, whether the error was harmful to the accused. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). If a defendant timely objected to the claimed error, an appellate court finding error may affirm only if it did not harm the accused in any way. *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986). Absent timely objection, we reverse only if the error was so egregious and created such harm that the appellant has not had a fair and impartial trial. *Almanza,* 686 S.W.2d at 171.

■ The charge should instruct the jury on the law applicable to every theory within the scope of the indictment which the evidence will support, whether favorable to the State or to the defendant. *Goodwin v. State,* 694 S.W.2d 19, 27 (Tex.App.—Corpus Christi 1985, pet. ref'd), *appeal after remand,* 725 S.W.2d 314 (Tex.App.—Corpus Christi 1986, no pet.); *see Antunez v. State,* 647 S.W.2d 649, 650 (Tex.Crim.App. 1983); *Simon v. State,* 624 S.W.2d 411, 412 (Tex.App.—Dallas 1981, pet. ref'd). Tex. Code Crim.Proc.Ann. art. 36.14 (Vernon Supp.1990) requires the trial court to apply the law to the facts presented. *Jackson v. State,* 633 S.W.2d 897, 899 (Tex.Crim.App. 1982).

The following evidence supports the contested application paragraph. Javier Gamez testified that on July 9, 1986, he and some friends began drinking beer about noon. Both he and appellant eventually got drunk, and they disagreed on Javier's treatment of his dog and because appellant was trying to sell fishing reels in Javier's house, and Javier did not want him to do so. Javier said he took one of the reels, told appellant to leave, and finally ran him off with a pipe and "some heavy words." Appellant was upset and said in Spanish, "I'll be back in a while." Eventually, all of Javier's friends except Joe (Jose) Mata, the victim, left. At about 9 p.m., when Javier and Joe were standing on a block of cement in the yard, Javier heard four shots, which he thought were firecrackers. The noise seemed to come from an alley or empty lot about thirty yards away on his right. There was no lighting. When he turned around, Joe was on the ground, face up, two feet away. When he touched Joe's head he got blood on his hand, so he told the neighbors to call the ambulance and police.

Lorenzo Rodriguez testified that appellant came to his house around 8 p.m. wanting to sell him fishing reels, claiming to have three in a paper bag. Only two were in the bag, so appellant said he was going to get the other one. When he returned, he said he couldn't find it, someone had hit him in the back, and, in Spanish, "This thing is not going to stay this way." Lorenzo said appellant asked for fifty cents to buy a quart of beer, and returned around 10 p.m.

Guadalupe Rocha Lopez testified that the appellant, her nephew, lived across the fence from her and that the Gamez residence was also nearby. She heard the shots on July 9 after dark. The next day, appellant told her he had killed a man by mistake. He told her he and Javier fought because of some reels and Javier had beat him up in the back. She testified appellant said he wanted to kill Javier, not the deceased.

■ The theory of transferred intent need not be in the indictment for it to have later application in the cause. *Dowden v. State,* 758 S.W.2d 264, 274 (Tex.Crim.App. 1988); *see Dowden v. State,* 638 S.W.2d 85, 90, 91 (Tex.App.—Houston [1st Dist.] 1982), *aff'd,* 758 S.W.2d 264 (Tex.Crim.App. 1988). A charge on transferred intent can be proper even though the indictment did

not specify that theory. *See McNeal v. State,* 600 S.W.2d 807, 807–08 (Tex.Crim. App.1980) (similar indictment for murder, also under Tex.Penal Code Ann. § 19.02(a)(1) (Vernon 1989)). In *Dowden,* the Court reasons that § 6.04 is supplementary and secondary to the sections defining offenses. *See McNeal,* 600 S.W.2d at 808.

We have examined *Garrett v. State,* 624 S.W.2d 953 (Tex.App.—San Antonio 1981), *rev'd,* 642 S.W.2d 779 (Tex.Crim.App.1982), *on remand,* 656 S.W.2d 97 (Tex.App.—San Antonio 1983), *aff'd in part, rev'd in part,* 749 S.W.2d 784 (Tex.Crim.App.1986, on reh'g 1988). Certain facts are parallel to those in this case: the indictment charged murder under Tex.Penal Code Ann. § 19.02(a)(1), the trial evidence showed that the defendant, while arguing with one person, shot another with whom she had no quarrel, and the charge contained an abstract instruction on transferred intent taken from Tex.Penal Code Ann. § 6.04(b)(2). *Garrett,* 624 S.W.2d at 955 and 956. The charge in *Garrett* did not apply § 6.04(b)(2) to the facts. The Fourth Court of Appeals began its analysis with the premise that a conviction for murder may be had under an indictment alleging a violation of § 19.02(a)(1), upon a proper application of § 6.04(b)(2) to the facts. The Fourth Court cited *McNeal* and *Williams v. State,* 567 S.W.2d 507, 509 (Tex.Crim.App.1978), in which the Court of Criminal Appeals clearly held that the doctrine of transferred intent applied to § 19.02(a)(1). The Fourth Court went on, however, to find fundamental, unassigned error for failure to include a theory of transferred intent in the application paragraphs, and the Court of Criminal Appeals reversed and remanded for consideration of the defendant's assigned errors.

In *Garrett,* 642 S.W.2d at 780–81, the Court of Criminal Appeals analogizes the law of transferred intent and the law of parties. The law of parties need not be alleged in the indictment to be applied in the charge. *Williams v. State,* 676 S.W.2d 399, 401–02 (Tex.Crim.App.1984); *Bratcher v. State,* 771 S.W.2d 175, 183 (Tex.App.— San Antonio 1989, no pet.). Similarly, we hold that the principle of transferred intent

under § 6.04(b)(2) may be applied when the evidence warrants although not be alleged in the indictment. We find no error, and overrule points one through three.

■ By point four, appellant complains that the State willfully failed to disclose a material fact, that disclosure was mandatory, and that it affected the outcome of the trial. Appellant claims the defense did not know of the oral confession to appellant's aunt, Mrs. Rocha, that his motion for discovery should have produced this information, and that had the defense known of this evidence, appellant would have probably accepted a plea bargain, and, if not, would have prepared extensive cross-examination.

The record shows that appellant filed a Motion for Discovery and Inspection requesting identification of witnesses to "verbal statements, admissions, or confessions at the time of his arrest or thereafter" and "[a]ny and all statements, admissions against interest and confessions, written or oral made by the Defendant at the time of the crime, the investigation, his arrest and during any questioning and thereafter." The record contains no ruling on the motion. Likewise, nothing in the record substantiates appellant's claims that the State did not advise the defense of the statements made to Mrs. Rocha, or that appellant was unaware of her statements. The only objection to the statements at trial was that of hearsay. We do not consider allegations which are unsupported and unfounded in the record. *Aguero v. State,* 476 S.W.2d 672, 673 (Tex.Crim.App.1972); *see Gelabert v. State,* 712 S.W.2d 813, 816 (Tex.App.—Houston 1986, pet. ref'd). We overrule point four.

■ Appellant's fifth point denies the sufficiency of the evidence that he used or exhibited a firearm during the commission of the offense. He argues that no weapon was recovered, the witnesses did not describe a weapon, and the State did not show that the projectile which killed the victim was expelled through a barrel by using the energy generated by an explosion or burning substance, as he contends Tex.

Penal Code Ann. § 46.01(3) (Vernon 1974) requires.

The definitions in § 46.01 are expressly limited to chapter 46 of the Penal Code. Since "firearm" is not defined elsewhere, it is given its common meaning from common usage. *Ex parte Campbell*, 716 S.W.2d 523, 526 (Tex.Crim.App.1986); Tex. Gov't Code Ann. § 311.011(a) (Vernon 1988). The State did not need to prove the specific definition in § 46.01(3).

 In determining the sufficiency of the evidence, we look at all the evidence in the light most favorable to the verdict or the judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). Direct and circumstantial evidence are equally probative for proving guilt beyond a reasonable doubt. *Hankins v. State*, 646 S.W.2d 191, 199 (Tex.Crim.App.1983) (on reh'g). In a circumstantial evidence case, the combined and cumulative force of all incriminating circumstances may warrant the jury's conclusion. *Livingston v. State*, 739 S.W.2d 311, 330 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Ramos v. State*, 767 S.W.2d 248, 249 (Tex.App.—Corpus Christi 1989, pet. ref'd).

Pathologist Ruben C. Santos testified that he performed the autopsy on Jose Mata, who had received a gunshot wound to his head. He testified that he followed a gunshot wound track inside the victim's head and recovered the bullet from the brain. He testified that finding the lead fragment in the victim's head is consistent with use of a firearm and concluded that the gunshot wound to the head was the only cause of death. This evidence, along with the evidence that a sound like firecrackers was heard just before the victim fell and was bleeding from the head, is sufficient to warrant the conclusion that the perpetrator used a firearm, as that term is commonly understood. We overrule point five.

 By point six, appellant attacks the affirmative finding on the use of a deadly weapon. Appellant asserts that the evidence was insufficient to support the finding and that it was improper for the trial court, rather than the jury, to make such a finding. The evidence recited in our discussion of point five is sufficient to sustain a finding of use of a deadly weapon.

 Certain instruments, such as a firearm, have been categorized as deadly weapons per se. *Stewart v. State*, 532 S.W.2d 349, 350 (Tex.Crim.App.1976); *Tenery v. State*, 680 S.W.2d 629, 635 n. 2 (Tex.App.—Corpus Christi 1984, pet. ref'd). When a trier of fact finds that a firearm has been used to commit an offense, then it has found that a deadly weapon has been used, since a firearm is a deadly weapon. *See Polk v. State*, 693 S.W.2d 391, 394 (Tex.Crim.App.1985). The verdict in this case necessarily included a finding that appellant used a firearm. *See Tenery*, 680 S.W.2d at 635. Thus, the verdict authorized the inclusion in the judgment of a finding of use of a deadly weapon.

The trial court erred, however, in entering its finding rather than the jury's finding, though the judge orally stated that the jury had made the finding. Because we have sufficient information, Tex.R.App.P. 81(c), we reform and correct the judgment to reflect that the jury, rather than the trial court, made the affirmative finding. *See Tenery*, 680 S.W.2d at 635. We overrule point six.

We REFORM the judgment, and, as reformed, we AFFIRM the trial court's judgment.