NUMBER 13-00-00290-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


CHRISTOPHER ZAMBRANO , Appellant,


v.


THE STATE OF TEXAS , Appellee.

___________________________________________________________________


On appeal from the 24th District Court

of Jackson County, Texas.

__________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Yañez, and Castillo

Opinion by Justice Castillo


Appellant Christopher Zambrano was found guilty by a jury of the offense of aggravated robbery and sentenced to
ninety-nine years in prison and a $10,000.00 fine. From this conviction he appeals, challenging in four points of error the
legal and factual sufficiency of the evidence for his conviction. We sustain the challenge to the legal sufficiency of the
evidence as to the issue of the use or display of a deadly weapon and overrule the remaining challenges.

Relevant Facts

Theresia Zarate, one of the victims in this case, worked at a Pizza Hut as the manager. Both she and her husband, Epifanio
Zarate, the second victim, knew appellant, who was an employee of the Pizza Hut and also a personal friend. Appellant had
worked at the Pizza Hut that day and had twice been visited by a man who came demanding money and whom appellant
stated he had to pay that night. Appellant had asked, and received, permission from Theresia to leave at around 11:00 p.m.
that same day stating that he had to go pick up his children from out of state and needed to get up at 4:00 in the morning.
Shortly after midnight on July 3, 1999, while she and her husband were leaving the restaurant, a man walked in and
demanded money, asking for the money bag. She and her husband claimed not to have it, stating they had given it to
another employee. The assailant was waving a gun back and forth and told them to lay down and, as they persisted in
saying they did not have the money, the assailant told them, "Gotdammit, don't lie to me, I'll shoot you." Theresia gave him
the change bag and the assailant said that was not what he wanted; he wanted the money in the safe. Later when she had a
hard time opening the safe, she heard the assailant say, "Gotdammit, if you don't open the safe I'm going to shoot you" and
she heard him cock the gun. Both of the victims recognized the speech patterns of the assailant as being those of appellant. 
Both also noted that the assailant knew: (1) that Epifanio smoked, telling him to use his lighter to light up the dark; (2)that
they were supposed to have a money bag; and (3) the existence and location of the ground safe. Theresia specifically noted
the assailant's pants which were still covered with flour from work that day; his shoes which she had laughed about earlier
in the day; and his knowledge of the location of the light switch in the cooler, which was generally known only by staff.

After the assailant left, the victims called the police. When the police arrived, they informed the investigating officer of
their suspicion of appellant and one officer went to appellant's home, where he found appellant's car in the driveway. After
receiving no answer after knocking on the door for five to ten minutes, the officer went to look at appellant's car in the
driveway. Shining a light in the car, the police saw a weapon in plain view, and a hat described by the victims. The police
took the Zarates to the scene, where Epifanio identified the gun as the one used in the offense and Theresia identified both
the hat, the gun, and a pair of sunglasses as having been used in the offense. After obtaining a search warrant, the officer
entered appellant's home and car. In the car, they found the bank bag from Pizza Hut with the money still in it, the gun, the
sunglasses, the hat, and a pair of gloves. Theresia stated that the assailant had worn sunglasses and those found by the
police appeared to be the type the offender was wearing, but she was not certain he wore gloves. From appellant's home,
the officers recovered a jacket and a pair of pants which Theresia identified as worn by the assailant that night. Another
officer testified that evidence was received that appellant arrived home around 1:00 to 1:30 a.m. and had then left in
another person's vehicle, leaving his car at home, where the vehicle stayed until secured by police at around 3:30 a.m. 

The officer who recovered the gun, which was a BB pistol, did not check it to see if it was loaded, but the officer who
inventoried it testified that, to his knowledge, there were no BB pellets inventoried. 

Appellant did not testify or call any witnesses.

Sufficiency of the Evidence

Appellant raises four issues, all of which challenge the legal and factual sufficiency of certain aspects of the evidence. His
first three issues assert that the evidence was legally and factually insufficient: 1) to sustain a conviction for aggravated
robbery; 2) to sustain a finding that appellant used or exhibited a deadly weapon; and 3) to sustain a finding that the "BB
pistol" used by appellant was a deadly weapon. His fourth issue attacks the legal and factual sufficiency of the evidence as
to the question of identity.

In conducting a legal sufficiency review, we consider all the evidence in the light most favorable to the prosecution and
determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In this review, we are not to reevaluate the weight and credibility of
the evidence, but rather, act only to ensure that the jury reached a rational decision. Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993). 

In conducting a factual sufficiency review, we also consider all the evidence but without the prism of the light most
favorable to the jury verdict. Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). While authorized to disagree
with the jury, the reviewing court must be appropriately deferential to the jury's findings so as not to substitute its judgment
for that of the factfinder and so should act only to prevent a manifestly unjust result. Jones v. State, 944 S.W.2d 642, 648
(Tex. Crim. App. 1996). Unless the available record clearly reveals a different result is warranted, a reviewing court must
defer to the jury's determination concerning the weight to be given contradictory testimonial evidence. Johnson v. State, 23
S.W.3d 1, 18 (Tex. Crim. App. 2000). This is because resolution between such testimony often turns on an evaluation of
credibility and demeanor, which the jury, having been present when the testimony was delivered, would be in the best
position to evaluate. Id. Under a factual sufficiency review, the appellate court, after viewing all the evidence neutrally, is
to consider whether either the proof of guilt is so weak as to render it clearly wrong and manifestly unjust or the verdict of
guilt is against the great weight and preponderance of the available evidence. Id. at 11. 





A. Deadly weapon finding

As appellant's first three issues are interrelated and are argued jointly in the brief, we will likewise address them jointly. 
We first consider the challenge to the legal sufficiency of the evidence for if the evidence is legally insufficient, we do not
reach the question of factual sufficiency. All of these issues revolve around the question of whether the BB pistol used was
a deadly weapon. We note in this regard that the penal code defines a deadly weapon as:

(A) a firearm or anything manifestly designed, made, or adapted for 

the purpose of inflicting death or serious bodily injury; or



(B) anything that in the manner of its use or intended use is capable

of causing death or serious bodily injury. 



Tex. Pen. Code Ann.§1.07(a)(17) (Vernon 1994).



Appellant makes two arguments under these issues, challenging the sufficiency of the evidence to prove that the BB pistol
was a deadly weapon under either of the two definitions set out above.

The first argument then is that the BB pistol was not a deadly weapon per se as it was not a firearm. Appellant also argues
under this point that because the BB pistol was not a firearm under the definition of section 46.01(3) of the penal code, it
was not a handgun as defined by section 46.01(5) of the penal code. In reference to the second part of his argument, at oral
argument appellant also claimed that, since the BB pistol did not meet the definition of a handgun under section 46.01(5),
the State entirely failed to prove the indictment as pled, which specifically claimed that a handgun was used. As to the
second part of this argument on the definition of a handgun, it is clear that the definition of handgun set out in section
46.01(5) is limited to the offenses set out in chapter 46 of the penal code. Ex parte Campbell, 716 S.W.2d 523, 526 (Tex.
Crim. App. 1986); Garcia v. State, 791 S.W.2d 279, 282 (Tex. App. - Corpus Christi 1990, pet. ref'd). In alleging a
handgun was used in the commission of an offense, the State need not prove that the handgun meets the definition
contained in section 46.01(5) of the penal code unless the State is charging a defendant with an offense under section 46.
Garcia, 791 S.W.2d at 282. Indeed, section 46.01, which is a definitions section, itself specifically states, "In this
chapter..." Tex. Pen. Code Ann §46.01(Vernon Supp. 2001)(emphasis added). Appellant's argument that the State failed
to prove the BB pistol was a handgun is therefore without merit. See Colon v. State, 680 S.W.2d 28, 30 (Tex. App. - Austin
1984, no pet.). As to the first part of the argument that a BB pistol is not a deadly weapon per se, this is apparently
conceded by the State which relies only on the second definition of deadly weapon, claiming that the BB pistol, in the
manner of its use or intended use was capable of causing serious bodily injury or death. This is the subject of appellant's
second argument and thus we turn to that question.

Appellant cites Holder v. State, 837 S.W.2d 802 (Tex. App. - Austin 1992, pet ref'd), for the contention that, since there
was no evidence that the BB pistol was loaded at the time of the robbery, there was no evidence that it could cause serious
bodily injury or death. He also argues that there was no evidence that appellant used or threatened to use the pistol as a
club or bludgeon. (1) To these arguments, the State responds by referring us to the more recent case of Delgado v. State, 986
S.W.2d 306 (Tex. App. - Austin 1999, no pet.). We find that Delgado states the standard proper under existing law and
analyze this case in light of that standard.

The critical question in Delgado was whether the jury could rationally infer, from the evidence presented in the case, that
the BB pistol was a deadly weapon at the time of the offense. Delgado, 986 S.W.2d at308-09. The Delgado court,
considering evidence of appellant having the opportunity and having taken steps to discard evidence, of brandishing the
weapon, pointing it at the victims and threatening to kill them, as well as evidence that suggested the defendant intended to
use the pistol as a club, found that the evidence rationally supported a jury finding that the BB pistol was a deadly weapon.
Id. 

While accepting the Delgado standard of analysis, we find that this case is distinguishable from Delgado in several critical
aspects. First of all, unlike in Delgado, there is no evidence in the present case that the BB pistol was ever used or
threatened to be used for striking the victims. Thus the only way any harm could have been inflicted would have been by
shooting. Therefore, the evidence regarding the presence or absence of BB pellets is particularly critical as the weapon in
the instant case could not have been a deadly weapon unless it was loaded. Adame v. State, 37 S.W.3d 141, 143-44 (Tex.
App. - Waco 2001, pet. granted)(citing Holder, 837 S.W.2d at 808-09)(BB pistol not generally capable of causing serious
bodily injury or death unless loaded). We must consider then whether, under the evidence in this case, a jury could have
rationally inferred that the BB pistol was actually loaded at the time of the robbery. Delgado, 986 S.W.2d at 308-09. At
trial, there was testimony that appellant pointed the gun at the victims, cocked it, and threatened to shoot. Like in Delgado,
this evidence gives rise to an inference that the pistol was loaded. However, the pistol was found unloaded three hours
later. This alone would not necessarily negate a finding that the pistol was a deadly weapon. Indeed, the pistol found in the
Delgadocase was also unloaded. However, in that case, the pistol was found separate from the money and from the
defendant, already hidden at another person's home, supporting a finding that the defendant had the time and opportunity to
discard evidence and could have likewise discarded the pistol's pellets in an effort to hide the evidence of the crime. Id. at
307-08. In the present case, the pistol was found in appellant's car along with the stolen money and various clothing items
used in the robbery. Unlike Delgado, there is no evidence that appellant tried to discard or hide evidence. There is nothing
on which to base an inference that appellant discarded any pellets. Like the Delgado court, we acknowledge this "question
is a close one," (2) but conclude that, given the finding of the BB pistol, unloaded, under circumstances that did not give rise
to more than a mere unsupported conjecture that pellets might have been discarded, the evidence was not sufficient for a
jury to rationally infer that the pistol was loaded at the time of the robbery. We therefore sustain this issue and find that the
evidence was not legally sufficient to support the finding of the use or display of a deadly weapon and thus not legally
sufficient to support a conviction on the charge of aggravated robbery. As we have found that the evidence is not legally
sufficient, we need not address the question of factual sufficiency. 

B. Identity

Appellant's last issue challenged the factual and legal sufficiency of the evidence in reference to the proof of the identity of
appellant as the perpetrator of the crime. Given the numerous identifying factors in this case cited by both victims and the
presence of the stolen money in appellant's car within a few hours of the crime, we find the evidence both legally and
factually sufficient on this point.

Conclusion

Robbery is a lesser-included offense of aggravated robbery. Ex Parte Walton, 626 S.W.2d 528, 530 (Tex. Crim. App.
1981). The jury in the present case was instructed on the lesser-included offense of robbery (3)and therefore, we may modify
the judgment to reflect a conviction on the lesser-included offense of robbery if the evidence at trial was sufficient to
support robbery. See Bigby v. State, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). We find that it was so. Accordingly,
having sustained the challenge to the legal sufficiency of the evidence to support a conviction for aggravated robbery, but
finding that the evidence is sufficient to sustain a conviction for robbery, we modify the judgment to reflect a conviction of
the lesser included offense of robbery and affirm the conviction as modified. We reverse the portion of the judgment
assessing punishment and remand this cause to the trial court for a new punishment hearing. Tex. Code Crim. Proc. Ann.
art. 44.29(b)(Vernon Supp. 2001).



ERRLINDA CASTILLO

Justice



Do not publish .

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 9th day of August, 2001.

1. There was undisputed evidence at trial that the pistol was capable of causing serious bodily injury if fired at close range
into an eye or could cause serious bodily injury or death if used to "pistol-whip" a person.

2. Delgado v. State, 986 S.W.2d 306, 308 (Tex. App. - Austin 1999, no pet.).

3. Appellant was charged in one indictment with two offenses - aggravated robbery in count one and robbery in count two.
Both counts involved the same victims on the same date. The only difference between the counts was the aggravating
factor of the use or display of a deadly weapon. The evidence at trial indicates that there was not a second robbery of these
same victims on the same day and thus supports a finding that both counts referred to the same offense. Where there are
two counts charging separate offenses, but there is evidence that the acts charged were actually a single offense, the State is
required to elect which offense it will proceed on or, in the alternative, receive a submission on the lesser charge only as a
lesser-included alternative to the greater offense. Ochoa v. State, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998). There was
no motion to elect made by appellant in the present case, and, although there is no discussion on the record, it appears that
the parties agreed that the robbery count should be submitted as a lesser-included offense to the aggravated robbery. The
jury charge clearly instructs the jury that it could only consider whether the defendant was guilty of robbery if, and only if,
the jury acquitted the defendant of the charge of aggravated robbery. Although the verdict form as to robbery includes the
phrase, "as alleged in Count 2 of the indictment," we believe the instructions of the trial court made it clear that robbery
was submitted only as a lesser-included offense of aggravated robbery, as would have been required by Ochoa, rather than
as a separate count for the jury's consideration. We find, therefore, that the jury was properly instructed on the
lesser-included offense of robbery and was authorized to convict on the same.