Bobby ADAME, Appellant,

v.

The STATE of Texas.

No. 594–01.

Court of Criminal Appeals of Texas.

March 6, 2002.

Phil Robertson, Clifton, for Appellant.

Dan V. Dent, DA, Hillsboro, Matthew Paul, State's Atty., Austin, for State.

*OPINION*

HERVEY, J., delivered the opinion of the court in which KELLER, P.J., WOMACK, KEALSER, HOLCOMB, and COCHRAN, JJ., joined.

We exercised our discretionary authority to decide whether evidence that appellant used a BB gun during a convenience store robbery was sufficient to support the jury's finding that appellant used a deadly weapon. *See Adame v. State,* 37 S.W.3d 141, 143–44 (Tex.App.-Waco 2001, pet. granted). We decide that the evidence was sufficient to support the jury's deadly weapon finding.

According to the evidence at trial, appellant entered a convenience store with a gun concealed under his sweatshirt. The store clerk feared for her life when appellant pointed the BB gun at her and demanded all the money. A police investigator testified that appellant's BB gun "could cause serious bodily injury if it were pointed and fired at someone." Consistent with current statutory law, the Court's jury charge defined a deadly weapon as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *See* Section 1.07(a)(17)(b), Texas Penal Code. The jury found that appellant "did then and there exhibit a deadly weapon in the commission [of the offense], to-wit: a BB gun."

On direct appeal, the Court of Appeals stated that it was "significant in the deadly weapon analysis" whether appellant's BB gun was loaded or unloaded. *See Adame,* 37 S.W.3d at 143. The Court of Appeals also stated that our recent decision in *McCain v. State* supported a decision that the BB gun was not capable of causing serious bodily injury because the State presented no evidence that it was loaded. *See Adame,* 37 S.W.3d at 143–44 *citing McCain v. State,* 22 S.W.3d 497, 503 (Tex. Cr.App.2000). The Court of Appeals,

therefore, held that the evidence was insufficient to support the jury's deadly weapon finding. *See Adame*, 37 S.W.3d at 144.

The main issue in *McCain* was whether the defendant "used or exhibited" a butcher knife which the complainant could see sticking out of the defendant's back pocket while the defendant was beating her up. *See McCain*, 22 S.W.3d at 499, 503. There was no dispute that the butcher knife in *McCain* was capable of causing serious bodily injury. Unlike *McCain*, this case is not a "used or exhibited" case since the evidence clearly shows that appellant used and exhibited the BB gun during the convenience store robbery. The issue here is whether appellant's BB gun was "capable" of causing serious bodily injury.

The evidence that appellant displayed the BB gun to the convenience store clerk and that the gun was capable of causing serious bodily injury if pointed and fired at someone is sufficient to support the jury's deadly weapon finding. Whether appellant's BB gun was loaded or unloaded is not significant in this analysis. What is significant is that appellant's BB gun was capable of causing serious bodily injury. *See McCain*, 22 S.W.3d at 503 ("an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury"); *Campbell v. State*, 577 S.W.2d 493, 495–96 (Tex.Cr.App.1979) (in case where State apparently did not put on any evidence that air pistol was loaded, air pistol was deadly weapon because it was designed to fire a projectile that could kill a person and because defendant pointed it at complainant, demanded money and threatened to kill complainant if he tried to run); *compare Mosley v. State*, 545 S.W.2d 144, 145–46 (Tex.Cr.App.1976) (unloaded air pistol not deadly weapon in part be-cause defendant never pointed it at victim's face).

The Court of Appeals erroneously decided that the evidence was insufficient to support the jury's deadly weapon finding because the State did not present evidence that appellant's BB gun was loaded. *See Adame*, 37 S.W.3d at 144. With testimony that a BB gun is capable of causing serious bodily injury, it is reasonable for a jury to make a deadly weapon finding. Further, in cases like this, where during a convenience store robbery a defendant threatens serious bodily injury to the convenience store clerk by pointing a BB gun at her, a jury may rationally infer that the BB gun is loaded. *See Delgado v. State*, 986 S.W.2d 306, 308 (Tex.App.-Austin 1999, no pet.) (jury could rationally infer that defendant's pistol was loaded from evidence that defendant brandished it, pointed it at robbery victims and threatened to kill them). It is reasonable to infer that defendants use loaded guns to facilitate convenience store robberies. It is not necessary, however, to place an additional evidentiary burden on the State to affirmatively prove that a BB gun, which is not a deadly weapon per se, was loaded at the time of the commission of the offense. Rather, in proving use of a deadly weapon other than a deadly weapon per se, the State need show only that the weapon used was capable of causing serious bodily injury or death in its use or intended use.

The judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

MEYER, J., filed a concurring opinion in which PRICE, J., joined.

JOHNSON, J., filed a concurring opinion.

MEYERS, J., delivered a concurring opinion, joined by, PRICE, J.

Although I agree with the result the majority reaches, I write separately because the majority's reasoning glosses over the laws of physics, the plain language of Texas Penal Code section 1.07 and our precedent interpreting it.

On direct appeal in this case, the Tenth Court of Appeals held that the evidence supporting the deadly weapon finding in appellant's case was legally insufficient because the State did not introduce evidence that appellant's weapon was loaded or evidence that would allow the jury to infer from the circumstances that the BB pistol was loaded. *Adame v. State*, 37 S.W.3d 141, 143–44 (Tex.App.Waco 2001). The majority overturns the appeals court and holds:

> [t]he issue here is whether appellant's BB gun was 'capable' of causing serious bodily injury.
>
> The evidence that appellant displayed the BB gun to the convenience store clerk and that the gun was capable of causing serious bodily injury when fired at someone is sufficient to support the jury's deadly weapon finding. Whether appellant's BB gun was loaded or unloaded is not significant in this analysis.

*Adame v. State*, 69 S.W.3d at 582 (Tex. Crim.App. 2002) (hereinafter cited as "Majority Op.").

I disagree with the majority for the simple reason that an unloaded gun can't be fired. Appellant's BB pistol was a deadly weapon because it was "capable of causing serious bodily injury when fired." Majority Op. at 582. Yet if appellant's gun was unloaded, it could not be fired and would be incapable of causing serious bodily injury if "fired" at someone. Whether a BB gun is loaded or unloaded is crucial to any deadly weapon analysis under section 1.07(a)(17)(B) because that determination places the weapon either within or beyond the reach of the statutory definition of "deadly weapon."

By evaluating a weapon's capability without reference to its actual ability to perform the function that makes it deadly, the majority effectively deletes the capability requirement from the statute and replaces it with the requirement that a weapon be capable of causing serious bodily injury at some point in its existence, though not necessarily during the offense in which the actor allegedly used a deadly weapon. Such reasoning would permit a deadly weapon finding if the defendant used a slingshot with no rock, a bow with no arrow, or a stick of dynamite with no fuse because, once reunited with the missing components of their deadliness, all of these implements would then be capable of causing serious bodily injury. This reasoning is supported neither by the plain language of the governing statute, nor our case law addressing the meaning of "deadly weapon."

The universe of deadly weapons is carved into two discrete hemispheres by Texas Penal Code section 1.07(a)(17). The first hemisphere is composed of those weapons that are firearms "or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." Tex. Penal Code § 1.07(a)(17)(A) (Vernon 1994). If the State alleges and proves that a weapon falls within this category, "it is not necessary to verify that the object was really capable of causing death." *Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Crim.App. 1991); *see also Wright v. State*, 582 S.W.2d 845, 847 (Tex.Crim.App.1979) *and Grant v. State*, 33 S.W.3d 875, 881 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (no requirement that firearm be loaded to support deadly weapon finding).

The second category of deadly weapons is comprised of "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17)(B) (Vernon 1994). As the majority notes, appellant was charged with using a deadly weapon as defined in this subsection. Majority Op. at 581. What the majority's analysis then fails to acknowledge, however, is that our case law has consistently analyzed a weapon's capability to inflict deadly harm in reference to the particular weapon on the particular occasion it was used. *See Thomas,* 821 S.W.2d at 619.

Because capability has been defined in reference to a weapon's actual ability to cause the requisite harm on the occasion in question, weapons that are considered dangerous and generally capable of causing serious bodily injury may fall outside the definition of deadly weapon if they are not functioning. *Mosley v. State,* 545 S.W.2d 144, 145–46 (Tex.Crim.App.1976). Contrariwise, objects that are generally not considered dangerous as such may become so by virtue of the manner in which they are used in the offense. *Thomas,* 821 S.W.2d at 620 (automobiles, telephone cords, bathwater, feather pillows, golf clubs, shanks); *Crutcher v. State,* 969 S.W.2d 543, 546 (Tex.App.-Texarkana 1998, pet. ref'd) (flashlight); *Sellers v. State,* 961 S.W.2d 351, (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd) (fire); *Davis v. State,* 955 S.W.2d 340, 352 (Tex.App.-Fort Worth 1997, pet. ref'd) (mixture of sedatives); *Najera v. State,* 955 S.W.2d 698, 701 (sexual organ and bodily fluids of man who was HIV positive); *Powell v. State,* 939 S.W.2d 713, 717 (Tex.App.-El Paso 1997, no pet.) (feet); *Morales v. State,* 792 S.W.2d 789, 790 (Tex.App.-Houston [1st Dist.] 1990, no pet.) (hands and underpants); *Cooper v. State,* 773 S.W.2d 749, 750 (Tex.App.-Corpus Christi 1989, no pet.) (hands); *Compton v. State,* 759 S.W.2d 503, 504 (Tex.App.-Dallas 1988, no pet.) (broken bottle).

These cases simply echo the plain language of Penal Code § 1.07: if an actor uses or intends to use an object in a manner in which it is capable of causing death or serious bodily injury, it is a deadly weapon. Nevertheless, no use or intended use on the part of a defendant can trump the laws of physics. If an actor shoots blanks or threatens a victim with a wet towel, he has not used a deadly weapon because neither implement is capable of causing death or serious bodily injury in the manner used.

The majority simply overlooks the requirement that a defendant's weapon be actually capable of causing serious bodily injury. Instead, the majority holds that "[w]ith testimony that a BB gun is capable of causing serious bodily injury, it is reasonable for a jury to make a deadly weapon finding." Such general evidence about the dangerousness of *a* BB gun might go to support a finding that a weapon was deadly by design, but it does not translate to a finding that the *defendant's* weapon was capable of causing serious bodily injury during the offense. Such a finding requires evidence that is particular to the defendant's weapon and the offense he committed. In this regard, a jury may consider all facts, including (1) the physical proximity between the victim and the object, *Tisdale v. State,* 686 S.W.2d 110, 115 (Tex.Crim.App.1984); (2) the threats or words used by the defendant, *Williams v. State,* 575 S.W.2d 30, 32 (Tex.Crim.App. 1979); (3) the size and shape of the weapon, *Blain v. State,* 647 S.W.2d 293, 294 (Tex.Crim.App.1983); (4) the weapon's ability to inflict death or serious injury, *id.* and (5) the manner in which the defendant used the weapon, *id.* No one factor is determinative, and each case must be examined on its own facts. *See Brown v.*

*State*, 716 S.W.2d 939, 946–47 (Tex.Crim. App.1986).

Requiring the State to introduce some evidence of a weapon's actual capability to cause serious bodily injury does not alter the burden the State has always borne on the deadly weapon issue. In this case, the State was not required to introduce affirmative evidence that appellant's gun was actually loaded; rather, it was entitled to rely on circumstantial evidence that supported the jury's inference that appellant's weapon was capable of inflicting serious bodily injury, i.e. that it was loaded. In *Delgado v. State*, 986 S.W.2d 306, 308 (Tex. App.-Austin 1999, no pet.), for instance, the court upheld a deadly weapon finding where the State introduced evidence that the BB gun used by the defendant would have been capable of causing serious bodily injury *if* loaded and evidence on which the jury could rationally have based an inference that the weapon *was* loaded. *Id.* Specifically, the State introduced evidence that the defendant brandished the BB gun in a threatening manner and actually threatened to kill the victims of the offense. The court held, "[w]hile the question is a close one, we believe the jury could infer that appellant was capable of making good his threats." *Id. Cf. Lee v. State*, 51 S.W.3d 365, 374–75 (Tex.App.-Austin 2001) (despite expert testimony that some air pistols are capable of causing serious bodily injury, deadly weapon finding was not supported by legally sufficient evidence where pistol was not in evidence, evidence conflicted on whether real or air pistol was used, and defendant held pistol to victim's head and neck but made no threats to kill or bludgeon her with it). However, if the State fails to introduce *any* evidence from which a rational jury could infer that a defendant's weapon was capable of causing serious bodily injury

during the commission of the offense, i.e. that the weapon was loaded, then it has not met its burden of proving that the defendant used a deadly weapon.

In this case, the State met its burden of proof. Contrary to the majority's assertions, however, the State did not meet this burden simply by offering evidence that the defendant committed the offense and that he had a BB gun with him. It met the burden by offering evidence that the gun would be dangerous if it were loaded *and* evidence that supported the jury's inference the gun was loaded during the commission of the offense. *See Delgado*, 986 S.W.2d at 308.

Here, the victim and appellant were separated by only the store counter. The weapon that appellant displayed was in evidence. A police investigator testified that it looked like a semi-automatic weapon and that he believed it would be capable of causing serious bodily injury. Although appellant did not specifically threaten the victim's life, he pointed a gun in her direction while simultaneously making the demand, "give me all your money." His demand was certainly punctuated with the implication that the gun would reinforce his request. There was a customer in the restroom, but appellant was working alone. Although the question is a much closer one than the majority implies in its abbreviated disposition of the deadly weapon issue, the jury in this case was entitled to find that appellant used a deadly weapon. I therefore concur in the result but do not otherwise join the majority opinion.

JOHNSON, J., filed a concurring opinion.

Appellant was indicted for aggravated robbery, pursuant to §§ 29.03(a)(2) and 1.07(a)(17)(B) of the Texas Penal Code.[1]

---

1. Section 29.03(a)(2) provides that "[a] per-    son commits an offense if he commits robbery

The pistol used by appellant was later found and identified as a BB gun, which fires projectiles with energy from compressed air rather than from an explosion or burning material. Thus, it is not a "firearm" and not "a deadly weapon *per se*."[2] The indictment in the instant case properly alleged that appellant "did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Susan Stone in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a BB gun that in the manner of its use or intended use was capable of causing death or serious bodily injury."

At trial, when asked by the state on direct examination whether she was "in fear of imminent bodily injury or death," the attendant answered, "Most definitely." Officer Gonzales, who was involved in the investigation of the robbery, testified that, based on his past experience, the pistol could cause serious bodily injury, if pointed and fired at someone.

The court of appeals observed that "[t]he fact that a BB pistol is loaded or unloaded is significant in the deadly weapon analysis," and that "a BB pistol is generally not 'capable' of causing death or serious bodily injury unless it is loaded." *Adame*, 37 S.W.3d at 143–44. The court of appeals correctly stated that this Court "recently held in *McCain* that 'objects used to threaten deadly force are in fact deadly weapons'" and that "the key to a deadly weapon finding is whether the weapon is 'capable,' in the manner of its

use or intended use, of causing death or serious bodily injury." *Id.* at 144. However, in *McCain*, we also stated:

> [The] plain language [of § 1.07(a)(17)(B) of the Texas Penal Code] does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. The placement of the word 'capable' in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force.

*McCain*, 22 S.W.3d at 503. Here, appellant's conduct threatened deadly force, regardless of his intent or lack of intent to actually use deadly force or, indeed, his actual ability to use deadly force. *Id.; see also Bailey v. State*, 38 S.W.3d 157, 158–59 (Tex.Crim.App.2001) (per curiam).

---

as defined in Section 29.02, and he ... uses or exhibits a deadly weapon." Section 1.07(a)(17)(B) provides that "[i]n this code ... 'Deadly weapon' means ... anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

2.  TEX. PENAL CODE ANN. § 46.01(3) (2000).