NUMBER
13-00-00290-CR

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                                CORPUS
CHRISTI

___________________________________________________________________

 

CHRISTOPHER ZAMBRANO,                                                  Appellant,

 

                                                   v.

 

THE STATE OF TEXAS,                                                          Appellee.

___________________________________________________________________

 

                         On
appeal from the 24th District Court

                                 of
Jackson County, Texas.

__________________________________________________________________

 

                           OPINION
ON  REMAND

 

                     Before
Justices Hinojosa, Yañez, and Castillo

                                  Opinion
by Justice Castillo








Appellant
Christopher Zambrano was found guilty by a jury of the offense of aggravated
robbery and sentenced to ninety-nine years in prison and a $10,000.00
fine.  From this conviction he appealed,
challenging in four points of error the legal and factual sufficiency of the
evidence for his conviction.  His first
three issues asserted that the evidence was legally and factually insufficient:
1) to sustain a conviction for aggravated robbery; 2) to sustain a finding that
appellant used or exhibited a deadly weapon; and 3) to sustain a finding that
the ABB pistol@ used by appellant was a deadly
weapon.  His fourth issue attacked the
legal and factual sufficiency of the evidence as to the question of
identity.  

On
original submission of this case, we overruled appellant=s fourth point of error and granted
his first three grounds, finding that the evidence was legally insufficient to
support the finding of the use or display of a deadly weapon and thus not legally
sufficient to support a conviction on the charge of aggravated robbery, because
it was not reasonable, under the facts of this case, to infer that the BB gun
was loaded, and hence the jury could not have reasonably found it to be a
deadly weapon.[1]  One of the cases on which we relied was the
court of appeals decision in  Adame v.
State, 37 S.W.3d 141 (Tex. App.BWaco 2001), rev=d, 69 S.W.3d 581 (Tex. Crim. App. 2002).  Subsequently, the court of criminal appeals
reversed Adame and, on the State=s petition for discretionary review
in this case, vacated our opinion on original submission and instructed us to
reconsider our opinion in light of the opinion in Adame.[2]   We have done so and now affirm.[3]









Relevant
facts








Theresia
Zarate, one of the victims in this case, worked at a Pizza Hut as the
manager.  Both she and her husband,
Epifanio Zarate, the second victim, knew appellant, who was an employee of the
Pizza Hut and also a personal friend. 
Appellant had worked at the Pizza Hut that day and had twice been
visited by a man who came demanding money and whom appellant stated he had to
pay that night.  Appellant had asked, and
received, permission from Theresia to leave at around 11:00 p.m. that same day
stating that he had to go pick up his children from out of state and needed to
get up at 4:00 in the morning.  Shortly
after midnight on July 3, 1999, while she and her husband were leaving the
restaurant, a man walked in and demanded money, asking for the money bag.  She and her husband claimed not to have it,
stating they had given it to another employee. 
The assailant was waving a gun back and forth and told them to lay down
and, as they persisted in saying they did not have the money, the assailant
told them, Agotdammit, don=t lie to me, I=ll shoot you.@ 
Theresia gave him the change bag and the assailant said that was not
what he wanted; he wanted the money in the safe.  Later when she had a hard time opening the
safe, she heard the assailant say, Agotdammit, if you don=t open the safe I=m going to shoot you@ and she heard him cock the
gun.  Both of the victims recognized the speech
patterns of the assailant as being those of appellant.   Both also noted that the assailant knew: (1)
that Epifanio smoked, telling him to use his lighter to light up the dark; (2)
that they were supposed to have a money bag; 
and (3) the existence and location of the ground safe.  Theresia specifically noted the assailant=s pants which were still covered
with flour from work that day; his shoes which she had laughed about earlier in
the day; and his knowledge of the location of the light switch in the cooler,
which was generally known only by staff.








After
the assailant left, the victims called the police.  When the police arrived, they informed the
investigating officer of their suspicion of appellant and the officer went to
appellant=s home, where he found appellant=s car in the driveway. After
receiving no answer after knocking on the door for five to ten minutes, the
officer went to look at appellant=s car in the driveway.  Shining a light in the car, the police saw a
weapon in plain view, and a hat described by the victims.  The police took the Zarates to the scene
where Epifanio identified the gun as the one used in the robbery and Theresia
identified the hat and gun, and a pair of sunglasses as having been used in the
robbery.  After obtaining a search
warrant, the police entered appellant=s home and car.  In the car, they found the bank bag from
Pizza Hut with the money still in it, the gun, the sunglasses, the hat, and a
pair of gloves. Theresia stated that the assailant had worn sunglasses and
those found by the police appeared to be the type the offender was wearing, but
she was not certain he wore gloves.  From
appellant=s home, the officers recovered a
jacket and a pair of pants which Theresia identified as worn by the assailant
that night.  Another officer testified
that evidence was received that appellant arrived home around 1:00 to 1:30 a.m.
and had then left in another person=s vehicle, leaving his car at home
where the vehicle stayed until secured by police at around 3:30 a.m. 

The
officer who recovered the gun, which was a BB pistol, did not check it to see
if it was loaded, but the officer who inventoried it stated that, to his
knowledge,  there were no BB pellets
inventoried. 

Appellant
did not testify or put on any witnesses.

Sufficiency
of the Evidence

We
review the legal sufficiency of the evidence under the standard of Jackson
v. Virginia, 443 U.S. 307, 319 (1979), and the factual sufficiency of the
evidence under the standard of Johnson v. State, 23 S.W.3d 1,11 (Tex.
Crim. App. 2000).

Appellant=s first three issues challenge the
sufficiency of the evidence to prove that the BB pistol used was a deadly
weapon.  We note in this regard that the
penal code defines a deadly weapon as:








(A) a firearm
or anything manifestly designed, made, or adapted for 

the purpose of
inflicting death or serious bodily injury; or

 

(B) anything
that in the manner of its use or intended use is capable

of causing
death or serious bodily injury.       

 

Tex. Pen.
Code Ann.'1.07(a)(17)
(Vernon 1994).

 

Appellant
originally made arguments under these issues, challenging the sufficiency of
the evidence to prove that the BB pistol was a deadly weapon under either of
the two definitions set out above.








The
first argument is that the BB pistol was not a deadly weapon per se as
it was not a firearm.  Appellant also
argues under this point that because the BB pistol was not a firearm under the
definition of section 46.01(3) of the penal code,[4]
it was not a handgun as defined by section 46.01(5)[5]
of the penal code.  In reference to the
second part of his argument, at oral argument appellant also claimed that,
since the BB pistol did not meet the definition of a handgun under section
46.01(5), the State entirely failed to prove the indictment as pled, which
specifically claimed that a handgun was used. 
As to the second part of this argument, on the definition of a handgun,
it is clear that the definition of handgun set out in section 46.01(5) is
limited to the offenses set out in chapter 46 of the penal code.  Ex parte Campbell, 716 S.W.2d 523, 526
(Tex. Crim. App. 1986); Garcia v. State, 791 S.W.2d 279, 282 (Tex. App.BCorpus Christi 1990, pet. ref=d). 
In alleging a handgun was used in the commission of an offense, the
State need not prove that the handgun meets the definition contained in section
46.01(5) of the penal code unless the State is charging a defendant with an
offense under section 46. Garcia, 791 S.W.2d at 283. Indeed, section
46.01, which is a definitions section, itself specifically states, AIn this chapter ... @ Tex.
Pen. Code Ann '46.01(Vernon Supp. 2002)(emphasis
added).  Appellant=s argument that the State failed to
prove the BB pistol was a handgun is therefore without merit.  See Colon v. State, 680 S.W.2d 28, 30
(Tex. App.BAustin 1984, no pet.).  As to the first part of the argument that a
BB pistol is not a deadly weapon per se, this is apparently conceded by
the State, which relies only on the second definition of deadly weapon,
claiming that the BB pistol, in the manner of its use or intended use, was
capable of causing serious bodily injury or death.  See Tex.
Pen. Code Ann. '1.07 (a)(17)(B)(Vernon 1994).  This is the subject of appellant=s second argument and thus we turn
to that question.








Appellant argues that since there
was no evidence that the BB pistol was used or threatened to be used as a
bludgeon, and no evidence it was loaded at the time of the robbery, there was
no evidence that it could cause serious bodily injury or death, citing Holder
v. State, 837 S.W.2d 802 (Tex. App.BAustin 1992, pet ref=d).[6]  To these arguments, the State responds by
referring us to the more recent case of Delgado v. State, 986 S.W.2d 306
(Tex. App.BAustin 1999, no pet.).  We find that Delgado  states the proper standard under existing law
and analyze this case in light of that standard.  The critical question in Delgado was
whether the jury could rationally infer, from the evidence presented in the
case, that the BB pistol was a deadly weapon at the time of the offense.  Id. at 308-09.  Unlike Delgado, there is no evidence
in the present case that the BB pistol was ever used or threatened to be used
for striking the victims.  Thus, the only
way any harm could have been inflicted would have been by shooting. 

We must consider then whether,
under the evidence in this case, a jury could have rationally inferred that the
BB pistol was capable of causing serious bodily injury.  Id. 
At trial, there was testimony that appellant pointed the gun at the
victims, cocked it, and threatened to shoot. 
Like in Delgado, this evidence gives rise to an inference that
the pistol was loaded and thus a deadly weapon. 
There was also expert testimony that if the BB pistol was fired at
someone, it was capable of causing serious bodily injury.








Under the court of criminal appeals
recent decision in Adame, such evidence is sufficient.  Adame, 69 S.W.3d at 582.  The court of criminal appeals has clarified
that, where there is testimony that the type of gun used was capable of causing
serious bodily injury, it is reasonable for a jury to make a deadly weapon
finding.  Id.   The court has also found it reasonable for a
jury to infer that a BB pistol was loaded where a defendant points a BB pistol
at a victim during a robbery.  Id.  Indeed, the court has found that it is
reasonable to infer that defendants use loaded weapons during convenience store
robberies.  Id. 

In his brief on remand, appellant
adds two additional arguments.

First, appellant claims that since
the State used the term Ahandgun@ in the indictment, rather than
using the language, Ain the manner of its use or
intended use is capable of causing serious bodily injury or death,@ the State was required to prove
that the handgun was a firearm or anything manifestly designed, made, or
adapted for the purpose of inflicting death or serious bodily injury.








Appellant contends that the State
must use the language of Ain the manner of its use or
intended use is capable of causing serious bodily injury or death,@ in the indictment in order to
charge a defendant with aggravated robbery using a deadly weapon under penal
code section 29.03(a)(2),[7]
when the deadly weapon being alleged is not a deadly weapon per se.  Appellant further argues that, because the
State used the term Ahandgun@ in the indictment in the instant
case, the State was required to prove that the BB pistol was a deadly weapon per
se under section 1.07(a)(17)(A), and in the absence of such proof, the
evidence is insufficient to sustain his conviction for aggravated robbery.  Appellant provides no authorities which
support these contentions.     








Appellant intermingles the notions
of pleading and proof.  The State did not
specifically plead a deadly weapon per se merely by alleging that a
handgun was used.  Colon, 680
S.W.2d at 29-30 (where State alleged defendant used or exhibited a Adeadly weapon: to wit, a handgun,@ State did not have to prove that Ahandgun@ was a firearm); see also Gomez
v. State, 685 S.W.2d 333, 336 (Tex. Crim. App. 1985)(necessary elements of
aggravated robbery do not include alleging the type of deadly weapon, citing Weaver
v. State, 551 S.W.2d 419 (Tex. Crim. App. 1977));  Weaver, 551 S.W.2d at 420 (description
of deadly weapon not necessary allegation in indictment).  Nor did the State plead a deadly weapon per
se by its failure to include the phrase, Awhich
in the manner of its use or intended use is capable of causing serious bodily
injury or death@ following the word Ahandgun.@ 
The term Adeadly weapon@ is defined by statute and so a
specific definition need not be included in the indictment.  Hudson v. State, 629 S.W.2d 227, 231
(Tex. App.BFort Worth 1982, no pet.).  Accordingly, absent an adequate motion to
quash, the State was not required to plead the deadly weapon any more
specifically than it did in order for the indictment to permit the jury to find
that appellant used or exhibited a deadly weapon under either definition of
section1.07(a)(17), which was supported by the evidence at trial.  See Cooper v. State, 573 S.W.2d 533,
535 (Tex. Crim. App. 1978)(where State alleged only that the defendant, A . . . did then and there by using
and exhibiting a deadly weapon, to wit: A KNIFE,@
the indictment was sufficient to sustain a conviction for aggravated robbery,
even though the knife was not a deadly weapon per se, where no motion to
quash was filed); Peralez v. State, 630 S.W.2d 330, 331 (Tex. App.B Houston [14th Dist.] 1982,  no pet.)(indictment for aggravated robbery
that failed to allege deadly weapon used or exhibited more specifically than a
knife was sufficient absent a motion to quash). 
As we have noted, there was sufficient evidence for the jury to find that
the BB pistol was a deadly weapon under section 1.07(a)(17)(B).

Appellant=s
second new contention is that there is a fatal variance between the indictment
and the proof at trial.  However,
appellant provides no legal authority for this claim and hence has waived it.[8]  Tex.
R. App. P. 38.1(h)(brief must contain appropriate citations to
authorities).








We find the evidence legally and factually sufficient to prove
that a deadly weapon was used and overrule appellant=s first three issues.  

Appellant=s fourth issue challenges the
factual and legal sufficiency of the evidence in reference to the proof of the
identity of appellant as the perpetrator of the crime.  Given the numerous identifying factors in
this case cited by both victims and the presence of the stolen money in
appellant=s car within a few hours of the
crime, we find the evidence both legally and factually sufficient on this point
and overrule it.

Conclusion

Having overruled all of appellant=s issues, we affirm the judgment of
conviction of the trial court.

 

ERRLINDA CASTILLO

Justice

 

Do not publish.

Tex. R. App. P. 47.3.

 

Opinion delivered and filed

this 29th day of August, 2002.                     











[1]
Zambrano v. State, No. 13-00-290-CR, 2001 Tex. App. LEXIS 5473 (Tex.
App.BCorpus Christi
2001)(not designated for publication),vacated, No. 2096-01 (Tex. Crim.
App. May 8, 2002)(not designated for publication).





[2]
Upon remand, we sent notice to the parties inviting them to file supplemental
briefs.  Both have done so. 





[3]
Appellant filed a brief on remand which asserted four Aadditional
issues on remand.@  The first three Aadditional
issues@ essentially
repeat the first three issues raised on original submission. The fourth Aadditional
issue@ is entirely
new.  Appellant explains that in filing
his supplemental brief on remand, he is not waiving prior issues raised but Awished
to suggest to the Court additional reasons@
for reversal of his conviction. 
Appellant=s new complaint
in his supplemental brief is that there is a fatal variance between the
pleading and the proof with regard to the alleged use of a deadly weapon.  We decline to address this new issue, find
that it was waived by not being included in the original brief to this court,
and address only the issues raised on original submission.  See Lopez v. State, 57 S.W.3d 625, 629
(Tex. App.BCorpus Christi
2001, pet. ref=d)(on remand we
will only consider issues which are raised as a result of the opinion by the
court of criminal appeals, its application on remand, and subsequent
authorities on issues previously presented, citing Sanders v. State, 963
S.W.2d 184, 186 (Tex. App.B
Corpus Christi 1998, pet. ref=d).  Generally, issues raised for the first time
in a supplemental brief are not considered properly presented for appellate
review.  See Monreal v. State, 947
S.W.2d 559, 563 n.5 (Tex. Crim. App. 1997)(court of appeals may, acting within
its sound discretion, decline to address issues raised for the first time in a
supplemental brief on remand).  The Aadditional
issue@ is one which
could easily have been raised in the original brief and  was not raised or supported by the holding of
the court of criminal appeals in Adame v. State,  69 S.W.3d 581 (Tex. Crim. App. 2002), which
was the basis for the remand in this case.  
Moreover, even if we chose to address the new issue, we would find that
it was waived as appellant presented no authorities in support of his
contention.  Tex. R. App. P. 38.1(h)(brief must contain appropriate
citations to authorities).  Even
considering such issue as a mere Aadditional
reason@ in support of
the previously raised issues, as we do later in this opinion, the argument is
waived by inadequate briefing.





[4]The
section states in pertinent part:

 

AFirearm@
means any device designed, made, or adapted to expel a projectile through a
barrel by using the energy generated by an explosion or burning substance or
any device readily convertible to that use. 


 

Tex. Pen. Code Ann. '46.01(3)(Vernon
Supp. 2002).





[5]The
section states:

 

AHandgun@
means any firearm that is designed, made, or adapted to be fired with one
hand.  

 

Tex. Pen. Code Ann. '46.01(5)(Vernon
Supp. 2002).





[6]
There was undisputed evidence at trial that the pistol was capable of causing
serious bodily injury if fired at close range into an eye or could cause
serious bodily injury or death if used to Apistol-whip@
a person.





[7]
That section reads, AA person
commits an offense if he commits robbery as defined in [Texas Penal Code] Section
29.02 and he: . . . uses or exhibits a deadly weapon.@
Tex. Pen. Code Ann. '29.03(a)(2)(Vernon
1994).





[8]
Appellant appears to presume that claims of factual sufficiency and fatal
variance are reviewed under the same standard. 
This is incorrect.  An argument
that there is a material variance between the proof adduced at trial and the
indictment first requires an examination of whether there is a variance,
Gollihar v. State,  46 S.W.3d 243,
246 (Tex. Crim. App. 2001), and then, if there is a variance,  an examination of the materiality of the
variance.  Id. at 257-58.  Some courts have viewed a variance claim as a
notice issue and others as a sufficiency issue, although the court of criminal
appeals has more consistently reviewed the issue as one of sufficiency.  Id. at 247.  However, even when viewed as a sufficiency
question, a variance claim is subject to an additional materiality analysis
which is not required under a traditional sufficiency of the evidence
review.   Id. at 247 n.7.  Only a material variance will render the
evidence insufficient.  Id. at 257.  

In the present case, appellant argues that there is nothing in
the record to support a finding that the handgun was a firearm.  This is not a variance between the indictment
and proof.  The indictment alleged a
handgun, not a firearm.  There was evidence
of a handgun.  Appellant also argues that
the indictment alleged a deadly weapon by design and the only proof presented
was of a deadly weapon by use.  As noted
previously, nothing in the indictment required the jury to find Aa
deadly weapon by design@ and thus the
fact that the jury (presumably) found a Adeadly
weapon by use@ is not a variance
between the indictment and the proof at trial.