COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )     

ELIJAH
EUGENE JEFFERY,                               )                    No. 
08-01-00060-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                     109th District Court

                                                                              )

THE STATE OF TEXAS,                                     )                 of Winkler County, Texas

                                                                              )

Appellee.                           )                             (TC# 4297)

 

O
P I N I O N

 

Elijah
Eugene Jeffery appeals his conviction for the offense of aggravated sexual
assault.  A jury found Appellant guilty
and assessed his punishment at imprisonment for a term of twenty years.  The trial court entered in the judgment an
affirmative finding on the use of a deadly weapon.  Tex.Code Crim.Proc.Ann.
art. 42.12, '
3g(a)(2)(Vernon Supp. 2002).  We affirm.

FACTUAL SUMMARY








Sherri
Rice and her boyfriend, Marti Beebe, were in bed asleep when Appellant and
another friend came to their house. 
Beebe got up and went to a bar with the others but Rice refused to go
with them, and instead, stayed in bed. 
At around midnight, Rice heard someone come into the house.  Believing Beebe had returned home, she sat up
in the bed and looked towards the bedroom door which was illuminated by the
light from the bathroom.  She saw
Appellant turn off the light before coming into the bedroom.  Appellant got on top of Rice and began
choking her.  When she tried to scream,
he clamped his hand across her mouth. 
Rice bit Appellant=s
finger and fought back for some time. 
She eventually succeeded in partially breaking away from him, but
Appellant repeatedly hit her in the back until she urinated in the bed and Ablacked out.@  Rice described herself as being conscious but
in shock.  Appellant then removed Rice=s panties and began sexually assaulting
her.  During this assault, Rice felt a
gun under her leg and hid it under the covers because she feared Appellant
would kill her.  When Appellant got off
of her, he began looking for the gun. 
Rice tried to escape but Appellant grabbed her.  They continued to fight and struggled over
the gun, falling onto the floor.  During
this struggle, Rice noticed that part of the weapon, perhaps the handgrip, had
broken.  Appellant attempted to point the
weapon at Rice so she put her finger into the trigger in an effort to prevent
him from firing it.  Appellant suddenly
got up and ran out of the bedroom with the gun. 
Rice believed he had heard a noise and became frightened that Beebe had
returned.  

Rice
hid in the closet for a while, but eventually grabbed a blanket and escaped
through a window.  Clothed only with the
blanket, she went to a neighbor=s
home and screamed for help.  One of the
neighbors went outside and told her that Beebe had just come home.  Rice ran back into the house and attempted to
call 911.  Beebe, who was extremely
intoxicated and did not know what had happened or why Rice was calling the
police, believed he would be arrested for public
intoxication and he took the phone away from her.  The neighbors, however, successfully called
the police and they arrived in a short time. 









Ron
Hoge, a Kermit police officer, arrived at the  scene and found
Rice sitting on a sidewalk, hysterical and crying.  She cowered under a blanket and repeatedly
stated, A[H]e
raped me.@  Hoge observed
scrapes on Rice=s face
and throat and he noticed that she was spitting blood onto the sidewalk.  An ambulance transported Rice to a hospital
where she was examined and treated.  She
had a cut inside of her mouth, and numerous scrapes and bruises on her face,
throat, breasts, shoulders, upper legs, knee, and back.  At the hospital, Rice became somewhat calmer
and Hoge was able to obtain a written statement from
her.[1]  She identified Appellant as her assailant and
told Hoge that he had used a gun during the
assault.  A doctor at the hospital
performed a rape examination and Hoge submitted the
evidence to a laboratory along with DNA specimens obtained from Appellant.              Police
investigated the scene at Rice=s
home and recovered evidence, including photographs of a large spot on the bed
which appeared to be urine, but they did not find a weapon.  They also obtained a search warrant for
Appellant=s
residence.  During the execution of the
warrant, officers found a CO[2] operated pellet pistol hidden inside
of an abandoned stove outside of the residence. 
The pistol looked remarkably similar to a semi-automatic weapon and its left
handgrip was missing.  

The
morning following the assault, Rice looked under her bed and found the CO[2]
capsule and the left handgrip from the gun Appellant had used during the sexual
assault.  She immediately called the
police and turned the items over to them. 
The handgrip matched the weapon recovered from Appellant=s home. 
In addition to Rice=s
testimony, other evidence connected Appellant to the assault.  Consistent with Rice=s
testimony that she had bitten Appellant, photographs of Appellant=s hands and fingers showed
abrasions.  Further, the vaginal swabs
taken from Rice tested positive for the presence of semen, and the DNA found in
that semen matched Appellant=s
DNA.  








Appellant
was indicted for aggravated sexual assault. 
Through cross-examination, Appellant offered the defensive theories that
Rice had engaged in consensual intercourse with Appellant and Beebe assaulted
her when he returned home.  The defense
could not explain, however, the presence of the pellet pistol=s handgrip underneath the bed.  The jury found Appellant guilty as charged in
the indictment.  

SUFFICIENCY OF THE EVIDENCE

Appellant
raises two issues related to the deadly weapon element of the offense and the
deadly weapon finding.  In Issue One,
Appellant challenges the legal and factual sufficiency of the evidence to
support the jury=s
determination that he exhibited a firearm during the offense.  In Issue Two, he contests the legal and
factual sufficiency of the evidence to show that the pellet pistol is, in fact,
a deadly weapon.

Standards of Review








In
reviewing the legal sufficiency of the evidence to support a criminal
conviction, we must review all the evidence, both State and defense, in the
light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318‑19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). 
This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony,
to weigh the evidence, and to draw reasonable inferences from basic to ultimate
facts.  Jackson, 443 U.S. at 319,
99 S.Ct. at 2789, 61 L.Ed.2d at 573.  We do not resolve any conflict of fact or
assign credibility to the witnesses, as it was the function of the trier of fact to do so. 
See Adelman v. State, 828 S.W.2d 418,
421 (Tex.Crim.App. 1992); Matson v. State, 819
S.W.2d 839, 843 (Tex.Crim.App. 1991).  Instead, our duty is only to determine if
both the explicit and implicit findings of the trier
of fact are rational by viewing all of the evidence admitted at trial in a
light most favorable to the verdict.  Adelman, 828 S.W.2d at 422.  In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. 
Matson, 819 S.W.2d at 843.   Further, the standard of review is the same
for both direct evidence and circumstantial evidence cases.  Geesa, 820 S.W.2d at 158.

When conducting a review of the factual sufficiency of the
evidence, we consider all of the evidence, but we do not view it in the light
most favorable to the verdict.  Clewis
v. State, 922 S.W.2d 126, 129 (Tex.Crim.App.
1996); Levario v. State, 964 S.W.2d
290, 295 (Tex.App.‑‑El Paso 1997, no
pet.).  We review the evidence
weighed by the jury that tends to prove the existence of the elemental fact in
dispute and compare it with the evidence that tends to disprove that fact.  Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Jones v. State, 944 S.W.2d 642,
647 (Tex.Crim.App. 1996), cert. denied, 522
U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997).  A defendant challenging the factual
sufficiency of the evidence may allege that the evidence is so
weak as to be clearly wrong and manifestly unjust, or in a case where the
defendant has offered contrary evidence, he may argue that the finding of guilt
is against the great weight and preponderance of the evidence.  See Johnson, 23
S.W.3d at 11.  Although we are
authorized to set aside the fact finder=s
determination under either of these two circumstances, our review must employ
appropriate deference and should not intrude upon the fact finder=s role as the sole judge of the weight
and credibility given to any evidence presented at trial.  See Johnson, 23
S.W.3d at 7. We are not free to reweigh the evidence and set aside a
verdict merely because we believe that a different result is more
reasonable.  Cain v.
State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997); Clewis, 922 S.W.2d at 135.

Elements of Aggravated Sexual Assault








A
person commits aggravated sexual assault if the person intentionally or
knowingly causes the penetration of the female sexual organ of another person
by any means without that person=s
consent, and if the person uses or exhibits a deadly weapon in the
course of the same criminal episode.  Tex.Pen.Code Ann. '
22.021(a)(1)(A)(i) and (a)(2)(A)(iv)(Vernon Supp.
2002).  An aggravated sexual assault is
without the other person=s
consent if the offense occurs under the same circumstances listed in Section
22.011(b) of the Texas Penal Code. 
Pertinent to this case, consent does not exist where the actor compels
the other person to submit or participate by the use of physical force or
violence.  Tex.Pen.Code Ann. '
22.011(b)(1).

The
indictment alleged that Appellant:

[W]ithout the consent of Sherri Dianne Rice, a female, did
intentionally and knowingly cause the penetration of the female sexual organ of
Sherri Dianne Rice by inserting his, the defendant=s
sexual organ in said female sexual organ and the defendant did then and there
intentionally and knowingly compel Sherri Diane Rice to submit to his said act
of penetration by then and there exhibiting a firearm, to wit, a gun, same
being a deadly weapon.  

 








It is apparent
that the indictment attempted to allege aggravated sexual assault pursuant to
Sections 22.021(a)(1)(A)(i) and
(a)(2)(A)(iv).  However, the indictment
is confusing in that it did not allege one of the statutory bases found in
Section 22.011(b) for showing an absence of consent.  Instead, it combines portions of the consent
element (compelled the victim to submit) and the aggravating element found in
subsection (2)(A)(iv)(by exhibiting a firearm).  The jury charge generally instructed the
jury, consistent with Section 22.011(b)(1), that
aggravated sexual assault is without the consent of the victim if the actor
compelled the other person to submit or participate by the use of physical
force or violence.  The application
paragraph did not apply the latter instruction to the facts.[2]  Despite these errors in the indictment and
the jury charge, we measure the sufficiency of the evidence by a hypothetically
correct charge.  Malik v. State, 953
S.W.2d 234, 240 (Tex.Crim.App. 1997).

Exhibition of a Firearm

            Appellant
first argues that the evidence is legally insufficient to show that he
exhibited a deadly weapon during the offense because Rice testified she never
saw a gun.[3]  He also complains that Rice unequivocally
stated that Appellant did not exhibit a firearm until after he had
sexually assaulted her.  These arguments
pertain to the aggravating element found in Section 22.021(a)(2)(A)(iv).

Although
the statute permits the State to prove that the defendant either used or
exhibited a deadly weapon, the indictment alleged only that Appellant exhibited
a deadly weapon in the course of the criminal episode.  It is well established that Ause@
and Aexhibit@ are not synonymous and each word is
exemplary of different types of conduct. 
Patterson v. State, 769 S.W.2d 938, 940 (Tex.Crim.App. 1989). 
For our purposes, a defendant uses a deadly weapon in the course of a
criminal episode if he employs or utilizes the weapon in order to achieve the
purpose of the criminal episode.  See Patterson, 769 S.W.2d at 941 (defining use in terms of
Article 42.12, ' 3g which
requires proof that the defendant used a deadly weapon Aduring
the commission of the offense@).  The term Ause@ encompasses mere possession if the
possession facilitates the associated offense. 
Id.  A defendant exhibits a
deadly weapon if he consciously shows or displays the weapon in the course of
the criminal episode.  See id.








Because
Rice did not Asee@ the weapon, Appellant argues that he
could not have displayed it. Appellant is correct that Rice stated she did not
see the gun.  However, she did not make
the statement in the sense that Appellant did not have a gun but rather that
she could not visually observe it since the offense took place at around
midnight in an unlit room.  She
repeatedly and consistently testified that she felt the gun under her leg and
she hid it beneath the covers.  Further,
her testimony that Appellant possessed a gun is corroborated by the physical
evidence.  Police matched pieces of a gun
she found beneath her bed with a gun later recovered from Appellant=s residence.  Rice also stated that she felt the gun with
her hands as they struggled over it and Appellant attempted to point it at
her.  From these facts, a jury could have
found beyond a reasonable doubt that Appellant exhibited the weapon.  Therefore, the evidence is legally
sufficient.  

In
his factual sufficiency argument, Appellant contends that Rice=s testimony is inconsistent and
contradictory regarding exhibition of the weapon.  We do not necessarily agree with Appellant=s characterization of her testimony but
even if we did, it was up to the jury to resolve any inconsistency in it.  In so doing, the jury could have taken into
account the physical evidence which supported Rice=s
testimony on many key matters contested by Appellant, including Appellant=s possession of a weapon.  Therefore, we find the evidence factually
sufficient to support the jury=s
determination on this issue.








With
his second argument, Appellant alleges that the State must prove that he
exhibited the firearm prior to or during the commission of the sexual
assault.  Under a hypothetically correct
charge, the State was required to prove that Appellant exhibited a firearm in
the course of the same criminal episode. 
The phrase Ain the
course of the same criminal episode@
is not defined in the context of Section 22.021, but it certainly means
something different than Aduring
the commission of the offense.@  See Johnson v. State, 777 S.W.2d 421,
423 (Tex.Crim.App. 1989)(construing Article 42.12, ' 3g and distinguishing the phrase Ain the course of the same criminal
episode@ from Aduring the commission of the offense@). 
The phrase Asame
criminal episode@ involves
the entire course of conduct, a broader concept than Aduring
the commission of the offense.@  See id.  Accordingly, we hold that the State is not
restricted to proving that the defendant exhibited the deadly weapon prior to
the commission of the offense but rather is permitted to prove that the
exhibition occurred prior to, during, or following the commission of the
offense so long as it occurred during the same course of conduct.

In
both his legal and factual sufficiency challenge, Appellant points to Rice=s Auncontradicted@
testimony that she did not discover the weapon until after the sexual assault
had been completed.  Our review of the
evidence, under either the legal or factual sufficiency standard, shows that it
is not entirely clear whether Rice felt the gun under her leg during the
initial physical attack or after Appellant had begun sexually assaulting her.  However, either scenario occurred in the
course of the same criminal episode. 
Likewise, the exhibition of the deadly weapon during the continued
assault following his sexual assault of Rice is also legally and factually
sufficient to show that he exhibited the weapon in the course of the same
criminal episode.

Consent








Appellant
next complains that because Rice did not notice the gun until after Appellant
had sexually assaulted her, he could not have compelled her submission by
exhibiting a firearm.  Under a
hypothetically correct charge, the State was not required to prove that
Appellant compelled Rice to submit by exhibiting the weapon prior to the sexual
assault.  Instead, it had to prove that
he compelled her to submit by the use of physical force or violence.  Without repeating the evidence stated in the
factual summary or the above discussion of the facts under the legal and
factual sufficiency standards, the State proved this element by more than
sufficient evidence.  For these reasons,
Issue One is overruled.

Deadly Weapon

In
Issue Two, Appellant challenges the legal and factual sufficiency of the
evidence to show that the pellet gun is a deadly weapon.  A sexual assault becomes an aggravated sexual
assault if the defendant uses or exhibits a deadly weapon in the course of the
same criminal conduct.  Tex.Pen.Code Ann. '
22.021(a)(2)(A)(iv). 
ADeadly
weapon@ means:

(A)  a firearm or anything manifestly designed,
made, or adapted for the purpose of inflicting death or serious bodily injury;
or

 

(B)  anything that in the
manner of its use or intended use is capable of causing death or serious bodily
injury.

 

Tex.Pen.Code Ann. '
1.07(17)(Vernon 1994). 
The definition of firearm is found in Chapter 46 of the Penal Code:  

>Firearm=
means any device designed, made, or adapted to expel a projectile through a
barrel by using the energy generated by an explosion or burning substance or
any device readily convertible to that use. 
Firearm does not include a firearm that may have, as an integral part, a
folding knife blade or other characteristics of weapons made illegal by this
chapter and that is:

 

(A)  an antique or curio
firearm manufactured before 1899; or

 

(B)  a replica of an
antique or curio firearm manufactured before 1899, but only if the replica does
not use rim fire or center fire ammunition.

 

Tex.Pen.Code Ann. '
46.01(3)(Vernon Supp. 2002).  








The
indictment alleged that the pellet gun is a firearm.  The jury charge tracked the definition found
in both subsections of Section 1.07(17), but it excluded the term Afirearm@
from its definition.  The evidence showed
that the gun possessed by Appellant during the offense was a CO[2]
pellet gun.  Such a weapon is not a
firearm because it uses compressed air, not the energy from an explosion or
burning substance, to discharge the projectile. 
Mosley v. State, 545 S.W.2d 144, 145 (Tex.Crim.App. 1977). 
Further, Officer Hoge provided his expert
opinion at trial that a CO[2] pellet gun is not manifestly designed or
made for the purpose of inflicting death or serious bodily injury.  Therefore, if the State did not establish
that the pellet gun, in the manner of its use or intended use, is capable of
causing death or serious bodily injury, then we must sustain Appellant=s argument.

In
McCain v. State, 22 S.W.3d 497, 503 (Tex.Crim.App.
2000), the Court of Criminal Appeals addressed whether a butcher knife carried
in the defendant=s pocket
during a violent attack on the victim was a deadly weapon under the definition
provided in Section 1.07(17)(B).  The
court pointed out that a key word in the definition is that the weapon be capable
of causing death or serious bodily injury. 
McCain, 22 S.W.3d at 503.  Thus, the mere carrying of a butcher knife in
the defendant=s back
pocket during the violent assault was legally sufficient to support the jury=s finding that the intended use for the
knife was that it be capable of causing death or serious bodily injury.  Id. 








Appellant
asserts that the pellet gun is not a deadly weapon under Section 1.07(17)(B) because the evidence did not show it was loaded.  In other words, he argues that the weapon was
not capable of causing death or serious bodily injury.  The Court of Criminal Appeals recently
addressed the same argument in Adame v.
State, 69 S.W.3d 581 (Tex.Crim.App. 2002).  There, the defendant entered a convenience
store with a B.B. gun concealed under his sweatshirt.  The store clerk feared for her life when the
defendant pointed the B.B. gun at her and demanded money.  A police investigator testified that the B.B.
gun could cause serious bodily injury if it were pointed and fired at
someone.  In its charge, the trial court
provided the definition of deadly weapon found in Section 1.07(17)(B) and the jury found that the defendant had exhibited a
deadly weapon, a B.B. gun, in the commission of the offense.  The court of appeals reversed, finding the
evidence legally insufficient because the evidence did not show whether the
B.B. gun was loaded or unloaded.  See Adame v. State, 37 S.W.3d 141, 143
(Tex.App.--Waco 2001).  However, the Court of Criminal Appeals found
the evidence sufficient because a police officer testified that the B.B. gun
was capable of causing serious bodily injury if pointed and fired at someone.  Adame, 69 S.W.3d at 582. 
Therefore, it was unnecessary for the State to show that the B.B. gun
was loaded.  Id.  The State needed only to show that the weapon
used was capable of causing serious bodily injury or death in its use or
intended use.  Id.

In
this case, Appellant elicited testimony from Officer Hoge
regarding the capability of a CO[2] pellet gun to cause serious bodily
injury:

[Appellant=s counsel]:  A BB gun, a pellet gun.  Is it capable of causing serious bodily injury
or death?

 

[Officer Hoge]:  It depends
where you hit somebody with the BB.  It
could put out an eye or --

 

[Appellant=s counsel]:  Is it designed -- is it manifestly designed
and made for death for the purpose of inflicting death or serious bodily
injury, in your opinion?

 

[Officer Hoge]:  No, sir.  

 

On re-direct, the State followed
up with this exchange:

 

[The
Prosecutor]:  Okay.  Even though that it was uncapable
[sic] of shooting an actual bullet, that actual gun would be capable of causing
the loss or serious use -- serious lack of use of an organ such as an eye, wouldn=t
it?

 

[Officer Hoge]:  Yes, sir.

 

[The
Prosecutor]:  And properly fired could
even penetrate or damage other organs of the body, couldn=t it?

 

[Officer Hoge]:  Possibly,
yes, sir.  

 








Similar
to the evidence in Adame, Rice testified that
Appellant attempted to point the gun at her as they struggled over the
weapon.  When the evidence regarding the
capability of the gun to cause serious bodily injury is considered in
combination with other evidence showing that Appellant carried the weapon with
him into Rice=s home
and attempted to point it at Rice during the assault, a rational jury could
find beyond a reasonable doubt that Appellant intended to use it in a manner
capable of causing serious bodily injury. 
Accordingly, the evidence is legally sufficient.  Viewing all the evidence as required in a
factual sufficiency review, the evidence is not so weak that the jury=s deadly weapon finding is contrary to
the overwhelming weight of the evidence. 
We overrule Issue Two and affirm the judgment of the trial court.

 

 

June 27, 2002

                                                                         


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew,
JJ.

 

(Do Not Publish)











[1]  A few days
after the assault, Rice gave a second more detailed written statement.  





[2]  Appellant did
not object to this deficiency in the charge at trial and he does not raise a
contention regarding it on appeal, nor does he challenge the sufficiency of the
evidence regarding the consent element.  





[3]  In making this
argument, Appellant also points to perceived inconsistencies in Rice=s testimony.  We
are unable to review these assertions in the context of a legal sufficiency
review.