In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-06-00025-CR
______________________________


BILLY JOE CARMON, JR., Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 8th Judicial District Court
Delta County, Texas
Trial Court No. 6673


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Billy Joe Carmon, Jr., attempts to appeal his conviction for sexual assault of a child. Carmon
pled guilty and was sentenced to ten years' imprisonment. Carmon's sentence was imposed
September 28, 2005. His notice of appeal was filed November 22, 2005. We received the clerk's
record March 15, 2006. The issue before us is whether Carmon timely filed his notice of appeal. 
We conclude that he did not and dismiss the attempted appeal for want of jurisdiction.
Â Â Â Â Â Â Â Â Â Â Â Â A timely notice of appeal is necessary to invoke this Court's jurisdiction. Olivo v. State, 918
S.W.2d 519, 522 (Tex. Crim. App. 1996). Rule 26.2(a) prescribes the time period in which a notice
of appeal must be filed by a defendant in order to perfect appeal in a criminal case. A defendant's
notice of appeal is timely if filed within thirty days after the day sentence is imposed or suspended
in open court, or within ninety days after sentencing if the defendant timely files a motion for new
trial. Tex. R. App. P. 26.2(a); Olivo, 918 S.W.2d at 522. The record does not contain any motion
for new trial. The last date Carmon could timely file his notice of appeal was October 28, 2005,
thirty days after the day the sentence was imposed in open court. See Tex. R. App. P. 26.2(a)(1). 
Further, no motion for extension of time was filed in this Court within fifteen days of the last day
allowed for filing the notice of appeal.
Â Â Â Â Â Â Â Â Â Â Â Â Carmon has failed to perfect his appeal. Accordingly, we dismiss the appeal for want of
jurisdiction.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â March 28, 2006
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â March 29, 2006

Do Not Publish



 essential elements of the offense beyond a reasonable doubt. Id.; Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000). In our review, we defer to the jury's determinations as to weight and
credibility of the evidence. Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

 B. Elements of Aggravated Assault

 A person commits assault if the person "intentionally, knowingly, or recklessly causes bodily
injury to another." See Tex. Penal Code Ann. § 22.01 (Vernon Supp. 2006). Assault becomes the
offense of aggravated assault when one of the following two circumstances is present: 1) the assault
causes serious bodily injury, or 2) the actor uses or exhibits a deadly weapon. See Tex. Penal Code
Ann. Â§ 22.02 (Vernon Supp. 2006); Landry v. State, 227 S.W.3d 380 (Tex. App.--Texarkana 2007,
pet. filed).

III. ANALYSIS

 A. Legally Sufficient Evidence of the Elements of the Offense

 1. Identity

 At trial, Thornfield consistently and repeatedly identified Quinonez as the individual who
struck him. Anderson, one of the officers at the station to which Thornfield drove himself
immediately after the injury, testified Thornfield reported that Quinonez had struck him. 
Approximately four days later, when Thornfield gave his written statement and first talked with
Detective Bonnette, Thornfield also identified Quinonez as the individual who struck him. Based
on this evidence, a rational jury could have found that Quinonez was the individual who struck
Thornfield.

 2. Assault

 A person commits assault if he or she intentionally, knowingly, or recklessly causes bodily
injury to another. Tex. Penal Code Ann. Â§ 22.01(a)(1). Here, the record shows that Thornfield
left Quinonez at the back of the house and went to the front and into the garage to an ice chest to get
a drink. There is no evidence that any demolition was being done in that particular location that
would call for Quinonez to follow Thornfield to the ice chest and start swinging a hammer above
and behind Thornfield. From the evidence that Quinonez was left to do work at the back of the
house, that Thornfield left that area to go to the front, and that Quinonez also came to the front where
he struck Thornfield from behind, the jury could infer that Quinonez intentionally or knowingly
struck Thornfield.

 There is also ample evidence that Thornfield suffered bodily injury as a result of being struck
behind his ear with the claw end of a hammer. Dr. Robert Sloane, Jr., testified that he performed
surgery on Thornfield after he and other physicians were unable to stop the bleeding. He described
Thornfield as "bleeding briskly." Dr. Sloane testified that Thornfield lost four to six units of blood
and that, considering the human body has only approximately eight units of blood, this injury was
"a serious bleeding episode" from which Thornfield could have bled to death. Dr. Sloane explained
that Thornfield had suffered "an incision or a laceration through the muscle" causing multiple areas
of arterial bleeding within the muscle that could not be stopped by simple suturing and that surgery
was required to stop the bleeding. Thornfield testified he still has numbness in that area as a result
of the injury. 

 3. Deadly Weapon

 At trial, Thornfield repeatedly and clearly testified Quinonez had a hammer in his hand when
Thornfield turned around. Defense counsel pointed out that, in Thornfield's statement made four
days after the event, Thornfield stated Quinonez had hit him with an object. Thornfield explained
that he did so because he was attempting to describe the event broadly and briefly so his statement
would fit on the one-page form he received from the police. Officer Anderson testified that, when
Thornfield arrived at the police station following the injury, he did not know what Quinonez had
used to strike him. Additionally, Detective Bonnette testified that, when he talked to Thornfield four
days later, Thornfield was not certain as to the object that was used, but that Thornfield did think it
was a hammer. 

 Dr. Sloane testified that Thornfield's linear wound was consistent with the claw end of a
hammer but agreed with defense counsel's suggestion that a knife could also have caused such an
injury. Dr. Sloane also testified he recalled Thornfield having indicated to hospital staff he had been
hit with a hammer. Thornfield testified consistently, and his medical records confirm that he did
report to hospital staff that he had been struck with a hammer. Detective Bonnette testified that a
hammer so used is capable of causing death or serious bodily injury. (2) 

 There is some evidence that, immediately and shortly after the serious injury to his head and
neck area, Thornfield may not have identified the object as a hammer. According to Thornfield's
testimony, he is very clear that Quinonez was holding a hammer when he turned around. 
Reconciliation of conflicting testimony is within the exclusive province of the jury. See Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001). Although there is evidence to the contrary,
the evidence that Quinonez used a hammer to strike Thornfield and that a hammer used in this
manner is capable of causing death or serious bodily injury is legally sufficient to enable the jury to
conclude beyond a reasonable doubt that Quinonez used a deadly weapon during the assault against
Thornfield. 

 B. Quinonez' Contentions

 We next address the specific contentions Quinonez presents in his brief to this Court. He
argues that the lackluster police investigation of the event, the missing testimony of the only other
witness, and the testimony from a defense witness that Thornfield had untruthful character "damaged
the State's case." We address those assertions in turn.

 1. Police Investigation

 We do not review the sufficiency of the police investigation; we review the evidence
presented at trial. To the extent that the sufficiency of the police investigation is reflected by the
sufficiency of the evidence, we have already concluded that the evidence is legally sufficient to
support the jury's verdict. (3)

 2. Absence of Byerly as Witness

 In reviewing the legal sufficiency of the evidence, we do not consider what evidence the State
could have or even should have presented. We review the evidence presented in a light most
favorable to the verdict to determine whether, from that evidence, a rational jury could have found
the elements of the charged offense beyond a reasonable doubt. Absence of a potential witness will
not render otherwise sufficient evidence insufficient.

 3. Evidence Regarding Thornfield's Untruthful Character

 Quinonez points to testimony from Thornfield's neighbor and former client, Linda
Hemingway, as support for his contention that the evidence was legally insufficient. Hemingway
testified that Thornfield had lied to her on many occasions and that he does not have a truthful
character. 

 We may not substantially intrude on the jury's role as sole judge of the weight and credibility
given to witness testimony. See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Johnson,
23 S.W.3d at 7. The jury is free to accept or reject any or all of the evidence presented by either side.
See Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Under our standard of review,
one witness' testimony concerning only the complainant's untruthful character will not, in itself,
render the evidence legally insufficient. We defer to the jury's determination as to credibility. See
Marshall, 210 S.W.3d at 625.

IV. CONCLUSION

 Viewing the evidence in a light most favorable to the verdict, we conclude that the evidence
is legally sufficient to support the jury's verdict. Thornfield's several statements to medical personnel
in the course of treatment for the head injury and his several statements during in-court testimony
that it was Quinonez who struck him with the hammer enabled the jury to find that it was Quinonez
who committed aggravated assault with a deadly weapon. 

 We overrule the sole point of error presented and, accordingly, affirm the trial court's
judgment.



 Jack Carter

 Justice


Date Submitted: August 17, 2007

Date Decided: September 12, 2007


Do Not Publish

1. At the time of trial, Byerly was at Fort Benning, Georgia, for basic training in the Army
National Guard. He did not testify at trial. 
2. A deadly weapon is "anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury." See Tex. Penal Code Ann. Â§ 1.07(a)(17)(B) (Vernon Supp.
2006); Adame v. State, 69 S.W.3d 581 (Tex. Crim. App. 2002).
3. Detective Bonnette explained his reasoning for deciding not to take from the scene the
hammer Thornfield suggested as the hammer with which Quinonez struck him. He explained that
he learned of the hammer days after the event and the scene had been left unsecured, causing him
to have concerns about the chain of custody.