

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-294-CR

ROBERT VESHONE MONROE                          APPELLANT

V.

THE STATE OF TEXAS                                   STATE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

In three issues, Appellant Robert Veshone Monroe contends that (1) the State did not present legally sufficient evidence to sustain an affirmative deadly weapon finding, (2) an egregious error occurred when the jury was allowed to make an affirmative deadly weapon finding, and (3) the State should have been

---

[1] *See* TEX. R. APP. P. 47.4.

judicially estopped from seeking an affirmative deadly weapon finding. We affirm.

## II. Factual and Procedural Background

The original indictment charged Monroe with aggravated robbery, alleging that during the incident he used or exhibited a "deadly weapon, to wit: a firearm." At a pretrial hearing, the parties reached an agreement regarding the wording of the indictment. The exchange between Mr. Gillespie, the prosecutor, and Mr. Valverde, Monroe's counsel, was as follows:

> [Mr. Gillespie]: . . . It will be my intention in just a moment to abandon the language at the very end of the indictment, "and the Defendant did then and there use and exhibit a deadly weapon, to wit, a firearm."
>
> But the agreement that I have with the defense is -- and the Defendant is that by abandoning that it becomes a robbery. The Defendant is singly enhancable so he'd be looking at a first degree range of punishment. And I just -- the agreement with the defense is that if I abandon that, they're going to put on the record that they've had sufficient notice that *I intend to prove that the BB gun used in the case is a deadly weapon and seek an affirmative finding from the jury, and that they're not going to object that they didn't have sufficient notice since it's a BB gun and not a firearm.* And that's what the evidence shows.
>
> . . . .
>
> [Mr. Valverde]: . . . I've had the opportunity to speak with Mr. Monroe regarding his rights anytime the district attorney wants to amend an indictment. And he indicates to me he clearly understood that. And he's in agreement that the State can amend their indictment, and *we waive our ten days' notice and proceed today* with the amended indictment.

2

. . . .

[Mr. Gillespie]: And just so we're clear, I mean, this is an abandonment, it's not an amendment.

. . . .

[Mr. Gillespie]: But what our agreement also is that they're not going to object to improper notice on the deadly weapon finding because it's a BB gun, it's not a firearm.

[The Court]: Is that also correct . . . ?

. . . .

[Mr. Valverde]: Just for clarification, Your Honor, *we are agreeing that we're waiving any notice on that, but we're not stipulating to that element*. [Emphasis supplied.]

Subsequently, the parties reduced their agreement to writing. The agreement's first two paragraphs identify the parties and their consent while the third and fourth paragraphs state as follows:

3. The parties agree that the prosecuting attorney . . . will abandon the phrase "and the defendant did then and there use and exhibit a deadly weapon, to-wit: a firearm" and proceed on the lesser included second degree felony of robbery with a single enhancement that, if proven, would make the range of punishment that for a first degree felony.

4. In addition, the prosecuting attorney has notified the defense of his intent to prove that the BB gun found on the defendant was a deadly weapon. The defense attorney and defendant agree that they have been given sufficient notice of the State's intent to prove that the BB gun was a deadly weapon *and to seek an affirmative deadly weapon finding from the jury.* The defense and defendant agree not to object to the

3

> deadly weapon submission based on lack of notice. [Emphasis supplied.]

The trial court approved the agreement and accordingly physically altered the indictment to strike out the deadly weapon language, so that it read, in part, thusly:

> Robert Veshone Monroe . . . did then and there unlawfully, intentionally, or knowingly, while in the course of committing theft of property of cash and drugs and with intent to obtain and maintain control of said property, threaten and place Nalini Patel in fear of imminent bodily injury and death, ~~and the defendant did then and there use and exhibit a deadly weapon, to wit: a firearm.~~

The charge to the jury, which Monroe objects to in this regard, allowed the jury to convict Monroe of robbery, but it also instructed the jury that "[i]f you find [Monroe] . . . guilty of robbery, then you must determine whether [Monroe] used a deadly weapon in the commission of the offense." The jury convicted Monroe of robbery and determined that he used or exhibited a deadly weapon during the commission of the offense. Monroe concedes that, if relevant, the evidence presented by the State on the deadly weapon issue would have been sufficient to sustain the finding.

The trial court assessed Monroe's punishment at thirty-five years' imprisonment in the TDCJ-ID and sentenced him accordingly. This appeal followed.

4

### III. Abandonment

In his first issue, Monroe argues that by abandoning the deadly weapon portion of the indictment, the State waived its right to seek a deadly weapon finding, thus, the State did not present legally sufficient evidence to sustain the affirmative deadly weapon finding because all the evidence it presented was no longer not relevant.

Apparently the State was concerned that the "firearm" referred to in the indictment was in actuality a BB gun, which can be a deadly weapon, but which may or may not be a "firearm." *See Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002); *Mosley v. State*, 545 S.W.2d 144, 145 (Tex. Crim. App. 1976); *Brown v. State*, No. 11-97-00033-CR, 1999 WL 33743888, *2 (Tex. App.—Eastland Jan. 21, 1999, no pet.) (not designated for publication). The State was apparently further concerned that by only dropping the phrase "a firearm" and leaving the language regarding a deadly weapon in the indictment, that the restrictive provisions of article 28.10 of the Texas Code of Criminal Procedure would have been implicated, necessitating a postponement of the trial. TEX. CODE CRIM. PROC. ANN. art. 28.10(a) (Vernon Supp. 2008). Much ink is spilled by the State and Monroe over the accuracy of the State's concern. However, this accuracy, or inaccuracy, is of no moment because we are concerned with what occurred, not why it occurred. The State argues, and

5

Monroe agrees, that a deadly weapon allegation need not be contained in the indictment in order for the jury to make a deadly weapon finding. *See Brooks v. State*, 847 S.W.2d 247, 248 (Tex. Crim. App. 1993). Further, Monroe does not contest the obvious — that he was aware that the State would seek a deadly weapon finding from the jury. He simply argues that the State waived its right to this finding regardless of the fact that not only did their agreement allow for the finding, but there was no objection to the charge to the jury in this regard. This is buyer's remorse. If Monroe wanted to object to the jury being allowed to make a finding, which the law did not require to be contained in the indictment, then he should not have agreed to allow the jury to make the finding and should have objected to the charge allowing it to do so.

Monroe argues that contract principles are applicable in this situation and apply in general in criminal cases. *See Ex parte Moussazadeh*, 64 S.W.3d 404, 411 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 813 (2002). He argues that the agreement to abandon the deadly weapon finding in paragraph three of the parties' agreement is not reconcilable with the subsequently-articulated intention to seek a deadly weapon finding from the jury. He then argues that under this situation "the provision which appears first controls." *Silver Spur Addition Homeowners v. Clarksville Seniors Apartments*, 848 S.W.2d 772, 775 (Tex. App. — Texarkana 1993, writ denied). This argument however is based

6

on a false premise. It is fundamental contract law in Texas that no single contract provision taken alone will be given controlling effect, but rather, all provisions must be considered in reference to the whole instrument. *Seagull Energy E & P, Inc. v. Eland Energy*, *Inc.,* 207 S.W.3d 342, 345 (Tex. 2006). When interpretating contractual language, we examine the writing as a whole to harmonize and give effect to all provisions so that none will be rendered without meaning. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). The intent of the parties in drafting contractual language will be determined from a single paragraph only if it appears that the paragraph alone touches on one matter and other provisions touch on other matters. *Monesson v. Champion Int'l Corp., Dell-Mar Div.*, 546 S.W.2d 631, 636 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.).

That being said, we hold that because the law allows a deadly weapon finding by the jury even when a deadly weapon allegation is not contained in the indictment, the intent of the parties as manifested in paragraphs three and four is that the abandonment of the "use and exhibit a deadly weapon, to wit: a firearm language" is not inconsistent with the agreed-to notice that the State would seek a deadly weapon finding from the jury.

Because of our holding, as to the parties' intent, we further hold that the evidence presented to the jury regarding the use of the BB gun as a deadly

7

weapon was, in fact, relevant and sufficient by Monroe's own admission. Monroe's first issue is overruled.

## IV. Egregious Harm

In his second issue, Monroe argues that the trial court's allowing the jury to make an affirmative deadly weapon finding requires reversal because although he did not object to the jury charge, the trial court's error in allowing the jury to make this determination was egregious error. This is so, he asserts, because it deprived him of a valuable right, "that of being free of a deadly weapon finding."

However, he did not have a right to be "free of a deadly weapon finding." We have already held that a deadly weapon finding is allowed to be made by the jury even when a deadly weapon allegation is not contained in the indictment and that he had contractually agreed to this jury determination. We necessary reject Monroe's argument and overrule his second issue.

## V. Judicial Estoppel

In his third issue, Monroe argues that the State should have been judicially estopped from seeking an affirmative deadly weapon finding because, he again argues, abandoning the deadly weapon portion of the indictment, pursuant to paragraph three of the agreement, is inconsistent with allowing the

8

jury to make a deadly weapon finding as provided in paragraph four of the agreement.

Yet again, we have held for reasons previously articulated that there is no inconsistency present and, as justice and sound public policy are the basis for judicial estoppel, *Long v. Knox*, 291 S.W.2d 292, 295 (Tex. 1956), which precludes a party from taking inconsistent positions in judicial proceedings, judicial estoppel is inapplicable and Monroe's third issue is overruled.

## VI. Conclusion

Having overruled Monroe's issues, we affirm the judgment of the trial court.

BOB MCCOY
JUSTICE

PANEL B:    DAUPHINOT, HOLMAN, and MCCOY, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: April 3, 2008

9