COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-294-CR

 

 

ROBERT VESHONE MONROE                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 30TH
DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction








In three issues, Appellant Robert Veshone Monroe
contends that (1) the State did not present legally sufficient evidence to
sustain an affirmative deadly weapon finding, (2) an egregious error occurred
when the jury was allowed to make an affirmative deadly weapon finding, and (3)
the State should have been judicially estopped from seeking an affirmative
deadly weapon finding.  We affirm.

II. 
Factual and Procedural Background

The original indictment charged
Monroe with aggravated robbery, alleging that during the incident he used or
exhibited a Adeadly weapon, to wit: a
firearm.@  At a pretrial hearing, the parties reached an
agreement regarding the wording of the indictment.  The exchange between Mr. Gillespie, the
prosecutor, and Mr. Valverde, Monroe=s
counsel,  was as follows:

[Mr. Gillespie]: . . . It
will be my intention in just a moment to abandon the language at the very end
of the indictment, Aand the Defendant did
then and there use and exhibit a deadly weapon, to wit, a firearm.@

But the agreement that I have with the defense is -- and the Defendant
is that by abandoning that it becomes a robbery.  The Defendant is singly enhancable so he=d be looking at a first
degree range of punishment.  And I just
-- the agreement with the defense is that if I abandon that, they=re going to put on the
record that they=ve had sufficient notice
that I intend to prove that the BB gun used in the case is a deadly weapon
and seek an affirmative finding from the jury, and that they=re not going to object
that they didn=t have sufficient notice
since it=s a BB gun and not a
firearm.  And that=s what the evidence shows.

 

. . . . 

 

[Mr. Valverde]: . . . I=ve had the opportunity to
speak with Mr. Monroe regarding his rights anytime the district attorney wants
to amend an indictment.  And he indicates
to me he clearly understood that.  And he=s in agreement that the
State can amend their indictment, and we waive our ten days= notice and proceed today
with the
amended indictment.








. . . .

 

[Mr. Gillespie]: And just
so we=re clear, I mean, this is
an abandonment, it=s not an amendment.

 

. . . . 

 

[Mr. Gillespie]: But what
our agreement also is that they=re not going to object to improper notice on the
deadly weapon finding because it=s a BB gun, it=s not a firearm.

 

[The Court]: Is that also
correct . . . ?

 

. . . . 

 

[Mr. Valverde]: Just for
clarification, Your Honor, we are agreeing that we=re waiving any notice on
that, but we=re not stipulating to
that element.  [Emphasis supplied.]

 

Subsequently, the parties reduced their agreement to writing.  The agreement=s first
two paragraphs identify the parties and their consent while the third and
fourth paragraphs state as follows:

3.     The parties agree that the prosecuting
attorney . . . will abandon the phrase Aand the
defendant did then and there use and exhibit a deadly weapon, to-wit: a firearm@ and
proceed on the lesser included second degree felony of robbery with a single
enhancement that, if proven, would make the range of punishment that for a
first degree felony. 








4.     In
addition, the prosecuting attorney has notified the defense of his intent to
prove that the BB gun found on the defendant was a deadly weapon.  The defense attorney and defendant agree that
they have been given sufficient notice of the State=s intent to prove that
the BB gun was a deadly weapon and to seek an affirmative deadly weapon
finding from the jury.  The defense
and defendant agree not to object to the deadly weapon submission based on lack
of notice.  [Emphasis supplied.]

 

The trial court approved the agreement and accordingly physically
altered the indictment to strike out the deadly weapon language, so that it
read, in part, thusly:

Robert Veshone Monroe . .
. did then and there unlawfully, intentionally, or knowingly, while in the
course of committing theft of property of cash and drugs and with intent to
obtain and maintain control of said property, threaten and place Nalini Patel
in fear of imminent bodily injury and death, and the defendant did then and
there use and exhibit a deadly weapon, to wit: a firearm. 

 

The charge to the jury, which Monroe objects to
in this regard, allowed the jury to convict Monroe of robbery, but it also
instructed the jury that A[i]f you find [Monroe] . . .
guilty of robbery, then you must determine whether [Monroe] used a deadly
weapon in the commission of the offense.@ The
jury convicted Monroe of robbery and determined that he used or exhibited a
deadly weapon during the commission of the offense.  Monroe concedes that, if relevant, the
evidence presented by the State on the deadly weapon issue would have been
sufficient to sustain the finding.

The trial court assessed Monroe=s
punishment at thirty-five years=
imprisonment in the TDCJ-ID and sentenced him accordingly.  This appeal followed.

 








III. 
Abandonment 

In his first issue, Monroe argues that by
abandoning the deadly weapon portion of the indictment, the State waived its
right to seek a deadly weapon finding, thus, the State did not present legally sufficient
evidence to sustain the affirmative deadly weapon finding because all the
evidence it presented was no longer not relevant.  








Apparently the State was concerned that the Afirearm@
referred to in the indictment was in actuality a BB gun, which can be a deadly
weapon, but which may or may not be a Afirearm.@  See Adame v. State, 69 S.W.3d 581, 582
(Tex. Crim. App. 2002); Mosley v. State, 545 S.W.2d 144, 145 (Tex. Crim.
App. 1976); Brown v. State, No. 11-97-00033-CR, 1999 WL 33743888, *2
(Tex. App.CEastland Jan. 21, 1999, no pet.)
(not designated for publication).  The
State was apparently further concerned that by only dropping the phrase Aa
firearm@ and
leaving the language regarding a deadly weapon in the indictment, that the
restrictive provisions of article 28.10 of the Texas Code of Criminal Procedure
would have been implicated, necessitating a postponement of the trial.  Tex.
Code Crim. Proc. Ann. art. 28.10(a) (Vernon Supp. 2008).  Much ink is spilled by the State and Monroe
over the accuracy of the State=s
concern.  However, this accuracy, or
inaccuracy, is of no moment because we are concerned with what occurred, not
why it occurred.  The State argues, and
Monroe agrees, that a deadly weapon allegation need not be contained in the
indictment in order for the jury to make a deadly weapon finding.  See Brooks v. State, 847 S.W.2d 247, 248
(Tex. Crim. App. 1993).  Further, Monroe
does not contest the obviousCthat he
was aware that the State would seek a deadly weapon finding from the jury.  He simply argues that the State waived its
right to this finding regardless of the fact that not only did their agreement
allow for the finding, but there was no objection to the charge to the jury in
this regard.  This is buyer=s
remorse.  If Monroe wanted to object to
the jury being allowed to make a finding, which the law did not require to be
contained in the indictment, then he should not have agreed to allow the jury
to make the finding and should have objected to the charge allowing it to do
so.








Monroe argues that contract principles are
applicable in this situation and apply in general in criminal cases.  See Ex parte Moussazadeh, 64
S.W.3d 404, 411 (Tex. Crim. App. 2001), cert. denied, 537 U.S. 813
(2002).  He argues that the agreement to
abandon the deadly weapon finding in paragraph three of the parties=
agreement is not reconcilable with the subsequently-articulated intention to
seek a deadly weapon finding from the jury. 
He then argues that under this situation Athe
provision which appears first controls.@  Silver Spur Addition Homeowners v.
Clarksville Seniors Apartments, 848 S.W.2d 772, 775 (Tex. App.CTexarkana
1993, writ denied).  This argument
however is based on a false premise.  It
is fundamental contract law in Texas that no single contract provision taken
alone will be given controlling effect, but rather, all provisions must be
considered in reference to the whole instrument.  Seagull Energy E & P, Inc. v. Eland
Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006).  When interpretating contractual language, we
examine the writing as a whole to harmonize and give effect to all provisions
so that none will be rendered without meaning.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 662 (Tex. 2005).  The intent
of the parties in drafting contractual language will be determined from a
single paragraph only if it appears that the paragraph alone touches on one
matter and other provisions touch on other matters.  Monesson v. Champion Int=l Corp.,
Dell-Mar Div., 546 S.W.2d 631, 636 (Tex. Civ. App.CTyler
1976, writ ref=d n.r.e.).

That being said, we hold that because the law
allows a deadly weapon finding by the jury even when a deadly weapon allegation
is not contained in the indictment, the intent of the parties as manifested in
paragraphs three and four is that the abandonment of the Ause and
exhibit a deadly weapon, to wit: a firearm language@ is not
inconsistent with the agreed-to notice that the State would seek a deadly
weapon finding from the jury.








Because of our holding, as to the parties= intent,
we further hold that the evidence presented to the jury regarding the use of
the BB gun as a deadly weapon was, in fact, relevant and sufficient by Monroe=s own
admission.  Monroe=s first
issue is overruled.

IV. 
Egregious Harm

In his second issue, Monroe argues that the trial
court=s
allowing the jury to make an affirmative deadly weapon finding requires
reversal because although he did not object to the jury charge, the trial court=s error
in allowing the jury to make this determination was egregious error.  This is so, he asserts, because it deprived
him of a valuable right, Athat of being free of a deadly
weapon finding.@ 

However, he did not have a right to be Afree of
a deadly weapon finding.@ We have already held that a
deadly weapon finding is allowed to be made by the jury even when a deadly
weapon allegation is not contained in the indictment and that he had
contractually agreed to this jury determination.  We necessary reject Monroe=s
argument and overrule his second issue.

V. 
Judicial Estoppel








In his third issue, Monroe argues that the State
should have been judicially estopped from seeking an affirmative deadly weapon
finding because, he again argues, abandoning the deadly weapon portion of the
indictment, pursuant to paragraph three of the agreement, is inconsistent with
allowing the jury to make a deadly weapon finding as provided in paragraph four
of the agreement. 

Yet again, we have held for reasons previously
articulated that there is no inconsistency present and, as justice and sound
public policy are the basis for judicial estoppel, Long v. Knox, 291
S.W.2d 292, 295 (Tex. 1956), which precludes a party from taking inconsistent
positions in judicial proceedings, judicial estoppel is inapplicable and Monroe=s third
issue is overruled.

VI. 
Conclusion

Having overruled Monroe=s
issues, we affirm the judgment of the trial court.

 

BOB
MCCOY

JUSTICE

 

PANEL B:   DAUPHINOT,
HOLMAN, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: April 3, 2008

 

 











[1]See Tex. R. App. P. 47.4.