

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos. 07-19-00267-CR
07-19-00268-CR
07-19-00269-CR

JOSUE JULIO GARCIA-MORALES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 47th District Court
Potter County, Texas
Trial Court Nos. 76315-A-CR, 76316-A-CR, 76319-A-CR, Honorable Dan Schaap, Presiding

June 21, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Josue Julio Garcia-Morales, filed appeals in all three of his convictions for 1) unlawful possession of a firearm by a felon (76315-A-CR), 2) aggravated assault with a deadly weapon (76316-A-CR), and 3) unlawfully carrying a weapon on alcohol premises (76317-A-CR). In his single issue, appellant contends the trial court abused its discretion by failing to instruct the jury on deadly conduct in his conviction for aggravated assault with a deadly weapon (07-19-00268-CR) only. Appellant does not challenge his other two convictions in his appellate brief. We affirm.

*Background*

Because appellant is challenging his aggravated assault conviction only, we will discuss the evidence as it relates to that offense. According to the indictment, appellant pointed a handgun at Jerrico Fjetland and threatened him with imminent bodily injury.

The events leading to appellant's indictment occurred in the early morning hours at the Red Rock Saloon in Potter County on May 17, 2018. Adrianne Fjetland was serving as bartender. After 1:45 a.m., she and her estranged husband, Jerrico, were the only persons in the bar. Adrianne had called and texted him earlier to come to the bar due to a "creepy" patron who had invited her to partake in cocaine with him. At approximately 2:15 a.m., Adrianne testified, appellant, appellant's brother, and the owner of the bar entered the bar through the backdoor. Appellant was the first person through the door and appeared intoxicated. He immediately approached Jerrico in a hostile manner and told him "[h]e did not belong at the bar." Jerrico stood up. Appellant lifted his shirt, and Jerrico "kind of got worried." Adrianne could not see anything from her vantage point. Appellant ordered Jerrico to sit down and have a drink. Jerrico complied. Appellant, then, sat next to him. Suddenly, appellant rose. Adrianne saw him draw a black handgun and point it at Jerrico. Appellant then told Jerrico that "he need[ed] to get out" and he "don't belong here." Adrianne testified that she feared for Jerrico's life and inserted herself between the two men. Shouts ensued resulting in Jerrico leaving the bar unharmed and calling the police. Adrianne admitted that the gun was never fired. She further said she did not see appellant strike Jerrico with the gun.

Jerrico testified that he was approximately ten feet away from appellant when he first saw the handgun. Appellant told him that he was going to sit down and have a drink. Appellant also pointed the weapon in his "general direction." Then, Jerrico was asked

2

what was going through his head when appellant pointed the gun at him, to which he replied, "this guy is going to shoot me." Jerrico represented that he feared for his life, stating "you're going to be scared if somebody pulls a gun out on you and you don't have nothing." He further described appellant moving to within three feet of him with gun in hand and "[p]ointing it at me."

Jerrico met police officers outside the bar, reentered with them, and identified appellant as the assailant. He and Adrianne also selected appellant's picture from a photo array and identified him as the person who pulled the gun. Both also testified that appellant had been drinking.

When the officers entered the bar to investigate Jerrico's complaint, and after Jerrico had pointed appellant out, appellant began approaching them. During the encounter, they heard a loud thud and discovered the source of the noise was from appellant dropping a handgun. Appellant was arrested for unlawfully possessing a handgun in a facility that sells alcohol. Additionally, they noticed him to be intoxicated and was belligerent with the officers.

When the officers recovered the gun, they discovered that it lacked a magazine and bullet in the chamber. Neither the magazine nor ammunition were ever found during the investigation. However, according to a witness, the "magazine can be discarded very easily," "[w]ith the simple press of a button."

After the close of evidence, appellant requested a jury instruction on the lesser included offense of deadly conduct for pointing the handgun at Jerrico. Counsel contended that "an unloaded weapon was pointed at the [victim], and . . . case law clearly states that is an act of deadly conduct in and of itself." "Pointing a weapon, whether the victim believes it is loaded or unloaded, is irrelevant," according to defense counsel. In

3

clarifying this argument, counsel continued by stating that in this case, "the weapon was clearly unloaded. There was no magazine. There was no bullet chambered." The State responded that the record is "actually devoid of evidence as to whether or not the firearm was loaded at the time that it was pointed at the victim." It further argued that appellant could not show that if he were guilty, it was of only of the lesser included offense. The trial court denied the request.

*Issue – Jury Instruction*

Appellant contends the trial court abused its discretion by refusing to instruct the jury on the lesser included offense of misdemeanor deadly conduct.[1] Appellant contends deadly conduct is a lesser included offense of aggravated assault with a deadly weapon in this case because the elements of deadly conduct are established by proof of the same or less than all the facts required to establish the commission of aggravated assault as charged in the indictment. The State concedes that deadly conduct is a lesser included offense of aggravated assault with a deadly weapon; however, it argues that the evidence adduced at trial did not warrant such a jury instruction here. We agree and overrule the issue.

A trial court's determination whether to submit or deny a lesser included offense instruction is reviewed for an abuse of discretion. *See Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005); *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). In making our determination, a two-part test is used to determine whether a defendant is entitled to an instruction on a lesser included offense. *See Cavazos v. State*, 382 S.W.3d 377, 382–83 (Tex. Crim. App. 2012). The first step, which is a question of

---

[1] In this case, a conviction for deadly conduct would result in punishment for a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 22.05(e) (West 2019).

law, "compares the elements alleged in the indictment with the elements of the lesser offense" to determine "if the proof necessary to establish the charged offense also includes the lesser offense." *Id.*at 382.

If the offense is a lesser included offense, the court moves to the second step and considers whether there is some evidence that would permit a rational jury to find that, if the appellant is guilty, he is guilty *only* of the lesser offense. *Id.* at 383. The second step is a question of fact based on the evidence at trial. *Id.* Satisfying the second step "requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Id.* at 385. That is, there must be evidence "directly germane" to the lesser included offense for the fact-finder to consider before an instruction on a lesser included offense is warranted. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). Finally, our task is to evaluate the evidence "in the context of the entire record." *Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005).

The State charged appellant with "intentionally or knowingly threaten[ing] Jerrico . . . with imminent bodily injury and did use or exhibit a deadly weapon, namely, a firearm which in the manner of its use or intended use is capable of causing death or serious bodily injury, during the commission of the assault." According to the pertinent statutes, a person commits aggravated assault if he uses or exhibits a deadly weapon while intentionally or knowingly threatening another with imminent bodily harm. *See* TEX. PENAL CODE ANN. § 22.01(a)(2) (West Supp. 2020), § 22.02(a)(2) (West 2019). A person commits the offense of deadly conduct when he "recklessly engages in conduct that places another in imminent danger of serious bodily injury *Id.* § 22.05(a).

The State concedes the existence of the first prong. Thus, we need only determine whether the evidence, when evaluated in the context of the entire record, would allow a rational jury to find appellant guilty *only* of the lesser offense of deadly conduct.

Appellant asserts that a rational jury could have found that he acted recklessly and not intentionally or knowingly. A person acts intentionally when it is his conscious objective or desire to engage in the conduct; *Id.* § 6.03(a), and a person acts knowingly when he is aware of the nature of the conduct or that the circumstances exist or when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Recklessness, on the other hand, is when the actor is aware of but consciously disregards a substantial and unjustifiable risk, that the circumstances exist, or the result will occur. *Id.* § 6.03(c). Furthermore, the risk "must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.* However, according to the deadly conduct statute, recklessness is presumed if the actor knowingly pointed a firearm at or in the direction of another irrespective of whether the actor believed the firearm to be loaded. *Id.* § 22.05(c). Appellant contends that because he was intoxicated at the time of the offense, pointed an unloaded weapon in Jerrico's "general direction," and did not give any verbal indication of his intention in displaying the weapon, that there is some evidence of record that would permit a rational jury to find appellant guilty only of the lesser included offense. We disagree.

The evidence, viewed in the context of the entire record, illustrated that appellant became immediately hostile and aggressive toward Jerrico after entering the bar. He told Jerrico that he did not belong at the bar and then ordered Jerrico to sit down and have a drink. Jerrico first saw appellant's handgun as appellant approached. Appellant

6

continued forward. The firearm remained directed "towards" and an "arm's length" from Jerrico when appellant stopped his approach. Jerrico testified he feared for his life. Adrianne also testified that she feared for Jerrico's life when she saw appellant holding the weapon at Jerrico when appellant stood "arm's length" from him. That he may have been intoxicated at the time of the incident "does not negate the elements of intent or knowledge." *Sakil v. State*, 287 S.W.3d 23, 28 (Tex. Crim. App. 2009). Moreover, a firearm is a deadly weapon *per se*; TEX. PENAL CODE ANN. § 1.07(a)(17), and when used in the commission of an aggravated assault by use or exhibition of a firearm pursuant to §§ 22.01 and 22.02(a)(2), the State is not required to prove the firearm is loaded or unloaded. *See Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002) (stating that it matters not whether the firearm was actually capable of causing death for it to be a deadly weapon); *Grant v. State*, 33 S.W.3d 875, 881 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (stating that there is no requirement that the firearm be loaded for it to be a deadly weapon).

As for the contention that appellant pointed the gun in Jerrico's general direction which entitled him to the presumption of recklessness, we say this. It may be one thing to point a firearm in one's general direction when yards away. It is another to point the handgun at someone standing an "arm's length" away while acting in an aggressive manner and informing the target that he is not free to leave.

The situation comes down to this, and it is particular to this case. The very evidence to which appellant points as entitling him to an instruction on deadly conduct is the very same evidence which would support a conviction for aggravated assault. Thus, it does not serve to illustrate, for purposes of obtaining an instruction on a lesser included offense, that the *only* offense for which appellant could be convicted is the lesser one.

7

*See Love v. State*, No. 12-18-00239-CR, 2019 Tex. App. LEXIS 7398, at *12–13 (Tex. App.—Tyler Aug. 21, 2019, pet. ref'd) (mem. op., not designated for publication) (appellant not entitled to jury instruction on lesser included offense of deadly conduct in aggravated assault with a deadly weapon case where evidence showed he pointed a gun at the victims and wanted them to leave); *Chaney v. State*, No. 14-93-00279-CR, 1994 Tex. App. LEXIS 2753, at *4–5 (Tex. App.—Houston [14th Dist.] Nov. 10, 1994, no pet.) (not designated for publication) (concluding that one pointing a firearm at another's head and pulling the trigger "demonstrates beyond a reasonable doubt that appellant used a firearm to intentionally threaten the complainant with imminent bodily injury" or aggravated assault even through the weapon was unloaded). Therefore, we find that appellant failed to satisfy the second prong of the two-step test as discussed earlier.

We affirm appellant's judgments for unlawful possession of a firearm by a felon (76315-A-CR), aggravated assault with a deadly weapon (76316-A-CR), and unlawful carrying a weapon on alcohol premises (76317-A-CR).

Per Curiam

Do not publish.